IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KEVIN S. ALBERT AND KIMBERLY LEBLANC ALBERT, TRUSTEES OF THE ALBERT REVOCABLE TRUST UAD 6/3/1997 AND RESTATED 1/7/2020,<br><br>          Plaintiff,<br><br>     vs.<br><br>EDWARD WILLIAM, SL, a foreign Corporation; ION INSURANCE GROUP S.A., a foreign Corporation; ION INSURANCE COMPANY, INC., a foreign Corporation; STEVE BONNER; LUXURY FINANCIAL GROUP, LLC; NOELLE NORVELL; JOHN DOES 1-50; JANE DOES 1-50; DOE PARTNERSHIPS 1-50; DOE CORPORATIONS 1-50; DOE GOVERNMENTAL AGENCIES 1-50; and DOE ENTITIES 1-50,<br>Defendants.<br>_____ | CIVIL NO. 23-00221 SOM-WRP<br><br>ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS LUXURY FINANCIAL GROUP, LLC, AND NOELLE NORVELL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT |

**ORDER GRANTING IN PART, DENYING IN PART
DEFENDANTS LUXURY FINANCIAL GROUP, LLC, AND NOELLE NORVELL'S
MOTION TO DISMISS SECOND AMENDED  COMPLAINT**

**I.        INTRODUCTION.**

        This diversity case arises from the grounding, salvage attempt, and sinking of *Nakoa*, a ninety-four-foot yacht, on the coast of West Maui.  In late 2022, Plaintiffs Kevin S. Albert and Kimberly Leblanc Albert, in their capacities as trustees of the Albert Revocable Trust, purchased *Nakoa* for $1,425,000.  ECF No. 84, PageID # 744.  To buy the yacht, the Alberts had obtained a $1,140,000 loan through Defendants Luxury Financial Group, LLC,

and its president, Noelle Norvell (collectively, the "Luxury
Finance Defendants"), Florida citizens.  *Id.* at PageID #s 752-53.
Luxury Financial Group is a limited liability company that
specializes in helping clients interested in purchasing luxury
boats, aircraft, and other vehicles obtain financing.  ECF No.
101-1, PageID # 889.

    Two months after purchasing the yacht, the Alberts
agreed to sell the yacht to Noelani Yacht Charters and its owner,
Jim Jones, with payments spread out over time.  ECF No. 84,
PageID # 743-44.  Two months after that, apparently while the
Alberts were still the registered owners or were still insured,
the yacht sank, allegedly through the fault of Jones and other
nonparties.  *Id.* at PageID #s 747-49.

    The Alberts filed an insurance claim, which was denied.
*Id.* at PageID #s 753-54.  The Alberts then sued ION Insurance
Company, Inc. (their insurer), and persons and entities involved
in the procurement of their insurance policy, including Edward
William, SL (ION's agent), Allied Financial Network ("AFN"), and
Steve Bonner, who is the AFN president and the Alberts' insurance
broker.  ECF No. 1.

    The Alberts recently amended their complaint to include
breach of contract, negligence, and breach of fiduciary duty
claims against the Luxury Finance Defendants. ECF No. 84 (Second
Amended Complaint).  The Luxury Finance Defendants now move to

2

dismiss the claims against them in the Second Amended Complaint ("SAC") on the ground that they had no duty to secure the Alberts' insurance.  ECF No. 101 (Luxury Finance Defendant's Motion to Dismiss).  ION Insurance Company, Inc., AFN, and Bonner take no position regarding the Luxury Finance Defendants' motion. ECF No. 105 (ION); ECF No. 104 (AFN & Bonner).  Edward William, SL, did not file a responsive statement.

While the SAC at Paragraph 64 asserts that the Luxury Finance Defendants were engaged "to ensure that the appropriate insurance for the vessel would be secured from a reputable marine insurance company that would insure the Trust against any foreseeable losses," the motion now before this court addresses only a breach of warranty insurance endorsement. *See* ECF No. 84, Page ID# 752.  This court concludes that the Luxury Finance Defendants do not meet their burden of establishing the Alberts' failure to state a breach of contract or breach of fiduciary duty claim against them.   The court denies the motion to dismiss those counts.  However, the court grants the motion with respect to the negligence claim.

II.        **LEGAL STANDARDS.**

Under Rule 12(b)(6), the court's review is generally limited to the contents of the complaint.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996).  If matters

3

outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. *See Keams v. Tempe Tech. Inst., Inc.*, 110 F.3d 44, 46 (9th Cir. 1997); *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).

However, courts may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Relevant here, the incorporation-by-reference doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

Documents whose contents are alleged in a complaint and whose authenticity is not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss. *See Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). However, conclusory allegations of law, unwarranted

deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *Sprewell*, 266 F.3d at 988; *Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996).

Under Hawai'i law, the existence of a duty is a matter of law. *Blair v. Ing*, 95 Hawai'i 247, 259, 21 P.3d 452, 464 (2001) ("Legal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done."); *Knodle v. Waikiki Gateway Hotel, Inc.*, 69 Haw. 376, 385, 742 P.2d 377, 383 (1987) ("The existence of a duty owed by the defendant to the plaintiff, that is, whether . . . such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other—or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled legal protection at the hands of the defendant, is entirely a question of law."). Accordingly, on a Rule 12(b)(6) motion to dismiss, the court need not take as true any conclusory allegation of the existence of a duty.

"[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**III.     BACKGROUND.**

The Alberts' claims against the Luxury Finance Defendants include a dispute over the existence and performance of duties in a "Conditional Approval Agreement" (the "Agreement") the Luxury Finance Defendants sent to them.[1]  *See* ECF No. 84, PageID #s 755-56, 757-58, 759-60.

---

[1] Although the Alberts did not attach a copy of the Agreement to the SAC, the claims against the Luxury Finance Defendants in the SAC repeatedly refer to and largely rely on the Agreement.  The court therefore treats the Agreement as incorporated by reference into the SAC, and the court considers the copy of the Agreement submitted by the Luxury Finance Defendants with their motion to dismiss.  *Khoja*, 899 F.3d at 1002.

On October 26, 2022, the Luxury Financial Group sent the Alberts the Agreement to document terms relating to the loan that Luxury Financial Group had procured for the Alberts and the requirements necessary for finalizing the loan. *Id.* at PageID # 752. The Agreement states:

Dear Mr. Albert,

Thank you for allowing Luxury Financial Group ("LFG") to obtain your loan for the 2004 Sunseeker 94 MY. This is a conditional approval to secure your loan with the terms below and subject to the following documentation:

**Loan Terms Proposed:**

Loan Amount $1,140,000.00; estimated purchase price of $1,425,000.00 plus taxes that are to be detem1ined. Loan term 180 months with a 240-month Amortization; collateral is a 2004 Sunseeker 94 MY; 5.50% fixed rate with an approximate monthly payment of $7.828.00. Other closing costs to register the vessel in the United States can be obtained.

**Prior to closing requirements:**

· Vessel must be United States Coast Guard Documented, First Preferred Ship's Mortgage and documentation to be completed by an AVDA doc agent
· **Proof of acceptable insurance coverage with a deductible not more than 2% of proper coverages, including a breach of warranty insurance endorsement in an amount no less than the loan amount is required[,] summer and winter mooring/storage location(s), new name of vessel and hailing port, needs to be reviewed prior to closing**
· Proof of down payment (cash) - $290,000.00
· The Albert Revocable Trust is to guarantee the loan
· Luxury Financial Group Processing Fee of $1,045.00
· Governmental documentary stamp tax is to be paid in the amount of $2,450.00 to the State of Florida for Florida closings
· If boat is currently moored outside the US, Foreign

> Funding requirements will apply and there will be a
> rate increase of .25%
>
> The conditional approval and rate are good until November
> 12, 2022.  Should any information arise during this
> process inconsistent with your application or lender
> guidelines, offer will be subject to further review.
> Please do not hesitate to contact me to discuss the items
> addressed above in further details.

ECF No. 101-4, PageID # 917 (emphasis in original).  The Agreement
was signed by Kimberly Albert and Norvell.  *Id.*

On the same day that the Luxury Financial Group sent the
Alberts the Agreement, Heidy Marrero, a Luxury Financial Group
representative, sent an email to Steve Bonner, the AFN President,
stating that Kevin Albert had given her Bonner's contact
information so that she could get the Alberts' "insurance quote and
binder" from Bonner for the Luxury Financial Group.  In that email,
Marrero included the specific lender requirements needed to close
the loan.  ECF No. 84, PageID # 753; ECF No. 101-5, PageID # 925
(copy of email chain).[2]  Among the specific lender requirements
enumerated in Marrero's email was a "breach of warranty insurance
endorsement in an amount no less than the loan amount[.]"  ECF No.
84, PageID # 753; ECF No. 101-5, PageID # 925.

---

[2] Because the Alberts' claims against the Luxury Finance
Defendants repeatedly reference and rely on this email chain, the
court may consider it at the motion to dismiss stage without
converting the motion to dismiss into a motion for summary
judgment.  *Khoja*, 899 F.3d at 1002. At the hearing on the Luxury
Finance Defendants' motion to dismiss, the Alberts' counsel
conceded that the Alberts were not challenging the authenticity
of any part of the email chain, including the portion submitted
by the Luxury Finance Defendants.

Later that day, Bonner sent a certificate of insurance for *Nakoa* and asked Marrero to "confirm received and all in good order." ECF No. 84, PageID # 753; ECF No. 101-5, PageID # 924. Marrero replied that she did not see a breach of warranty insurance endorsement in the certificate of insurance. ECF No. 84, PageID # 753; ECF No. 101-5, PageID # 923.

The Alberts allege that the required insurance policy for *Nakoa* was never obtained and that the Luxury Finance Defendants "never followed up" with AFG or Bonner. ECF No. 84, PageID # 753. The Alberts contend that they fully performed their obligations under the Agreement, and that they "expected and relied on the Luxury Finance Defendants to meet their financing and insurance needs." *Id.*

"The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell*, 266 F.3d at 988. As pointed out in the Luxury Finance Defendants' motion to dismiss, ECF No. 101-1, PageID # 894, the email chain between Bonner and Marrero contradicts the Alberts' allegations. The email chain indicates that Marrero and Bonner exchanged several additional emails, in which Bonner sent Marrero an updated certificate of insurance that appears to have contained a breach of warranty insurance endorsement. ECF No. 101-5, PageID #s 919-27.

During the hearing on the Luxury Finance Defendants' motion to dismiss, the Alberts clarified their claims. Although the selective email citation in the SAC suggested that the Luxury Finance Defendants' alleged failing was in not following up on whether a breach of warranty endorsement was indeed included in the certificate of insurance, ECF No. 84, PageID # 753, at the hearing the Alberts focused on an entirely different alleged failing. The Alberts explained that they were alleging that the Luxury Finance Defendants had a duty to investigate whether the certificate of insurance was fraudulent. That is, the Alberts said at the hearing that they were questioning the validity of the certificate of insurance, not the Luxury Finance Defendants' receipt of a certificate of insurance that appeared to include a breach of warranty endorsement. According to their argument at the hearing, the Alberts are contending that the Luxury Finance Defendants should have looked behind the certificate of insurance to see whether what was certified was in fact within an insurance policy that had been issued.

**IV.      DISCUSSION.**

The Alberts' claims against the Luxury Finance Defendants rest on allegations that the Luxury Finance Defendants owed duties to secure insurance for the Alberts, and that the Luxury Finance Defendants breached those duties, resulting in financial damages to

the Alberts.  *Id.* at PageID #s 755-56 (breach of contract claim), 757-58 (negligence claim), 759-60 (breach of fiduciary duty claim).

### A.   Breach of Contract Claim.

In Count II, their breach of contract claim, the Alberts allege that the Luxury Finance Defendants "had duties to meet the [Alberts'] objectives," including "obtaining liability and casualty insurance to protect the [Alberts'] interest against all foreseeable losses."  These duties allegedly included but were not limited to "obtaining salvage, environmental damage, and breach of warranty insurance to protect the [Alberts] against the loss of the Vessel, any environmental damage incurred during a casualty event, and against a denial of coverage by the insurance carrier for such loss."  ECF No. 84, PageID # 755.  The Alberts allege that the Luxury Finance Defendants "breached those duties . . . resulting in direct and proximate damage to the [Alberts] in amounts which will be proven at trial including, but not limited to, the loss of the Vessel, DLNR claims and fines, the cost of the salvage, and environmental damages claims, if any."  *Id.* at PageID # 756.

Establishing the existence of a contract requires "'an offer and acceptance, consideration, and parties who have the capacity and the authority to agree as they do.'" *In re Doe*, 90 Hawai'i 200, 208, 978 P.2d 166, 174 (1999) (quoting *Dowsett v. Cashman*, 2 Haw. App. 77, 83, 625 P.2d 1064, 1068 (1981)).  Further, "'[t]here must be mutual assent or a meeting of the minds on all

essential elements or terms in order to form a binding contract.'"[3] *Carson v. Saito*, 53 Haw. 178, 182, 489 P.2d 636, 638 (1971) (quoting *Honolulu Rapid Transit Co. v. Paschoal*, 51 Haw. 19, 26-27, 449 P.2d 123, 127 (1968)).

The SAC does not identify a specific provision of the Agreement that the Luxury Finance Defendants allegedly breached.

On this motion to dismiss, this court accepts as true the Alberts' allegation in Paragraph 64 of the SAC that they engaged the Luxury Finance Defendants to ensure that the Alberts had "appropriate insurance against any foreseeable losses." That is an allegation going to purported facts. The insurance in issue was allegedly supposed to include breach of warranty insurance, but, as this court reads the SAC, the insurance was not necessarily limited to breach of warranty insurance, even though that is the focus of the motion to dismiss.

At the hearing on their motion to dismiss, the Luxury Finance Defendants argued that the written Argument was a

---

[3] Adjudicating a motion for summary judgment, another judge of this court has identified the elements of a breach of contract claim under Hawai'i law as: "(1) the contract at issue; (2) the parties to the contract; (3) whether plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by defendants; and (5) when and how defendants allegedly breached the contract." *Marine Lumber Co. v. Precision Moving & Storage, Inc.*, Civ. No. 16-00365 LEK-RLP, 2017 WL 1159093, at *6 (D. Haw. Mar. 28, 2017). This court is conscious that it is not now dealing with a motion for summary judgment, which would focus on proof, but rather a motion to dismiss, which, at its core, centers on notice to a defendant of the claims against that defendant.

complete statement of what the Alberts and the Luxury Finance
Defendants had agreed to.  In support of this argument, the
Luxury Finance Defendants pointed to Paragraph 90 of the SAC,
which states, "The Plaintiffs fully performed their obligations
under the Conditional Approval Agreement."  According to the
Luxury Finance Defendants, the Alberts asserted their own full
performance under the Agreement as a necessary predicate for
claiming that the Luxury Finance Defendants had breached the
Agreement, and this in turn established that the Alberts' breach
of contract claim was premised entirely on the Agreement.

        In their brief opposing the motion to dismiss, the
Alberts agree with the Luxury Finance Defendants that the
Agreement  is the only subject of the breach of contract claim.
The Alberts say, "The SAC details the contract at issue (i.e.
Conditional Approval Agreement) which was executed by both the
Plaintiffs and Norvell, as President of LFG."  ECF No. 103,
PageID # 940.  The court therefore confines itself to what is in
the Agreement.  But that Agreement is not limited solely to
breach of warranty insurance, requiring "acceptable insurance
coverages, including a breach of warranty insurance endorsement
in an amount no less than the loan amount."  ECF No. 101-4, Page
ID # 917.  At the hearing, the Alberts urged this court to
conclude that the written Agreement is ambiguous and should be
fleshed out during discovery.

With respect to insurance other than breach of warranty insurance, this court declines to dismiss the breach of contract claim because the motion does not grapple with the allegation that the Luxury Finance Defendants were engaged to ensure that the Alberts had whatever insurance was "appropriate" to protect them "against any foreseeable losses."

With respect to breach of warranty insurance, this court has more detailed briefing before it. Having carefully considered that briefing, this court finds that it does not support dismissal of Count II with respect to breach of warranty insurance.

No one disputes that the Agreement mentions breach of warranty insurance. ECF No. 84, PageID # 752; ECF No. 101-1, PageID # 897; ECF No. 101-4, PageID # 917. The Agreement lists several "prior to closing requirements," and one of the items on that list is "proof of acceptable insurance coverage," which includes "a breach of warranty insurance endorsement." ECF No. 84, PageID # 752; ECF No. 101-4, PageID # 917. On the record before this court, this court cannot say that the Agreement unambiguously supports the Luxury Finance Defendants' position.

The Luxury Finance Defendants contend that a breach of warranty endorsement "protects the lender (in this case, the bank that agreed to provide the Alberts with a loan) if the borrower (in this case, the Alberts) damages the property used as

14

collateral for the loan and the borrower cannot recover insurance proceeds because of his or her malfeasance." ECF No. 101-1, PageID # 887 (citing *Nat'l Union Fire Ins. Co. v. Care Flight Air Ambulance Serv., Inc.*, No. 3:91-CV-1187-H, 1992 WL 613254, at *3 (N.D. Tex. Nov. 2, 1992)). In other words, the Luxury Finance Defendants' position is that the Agreement provision requiring the breach of warranty endorsement obligated the Alberts to obtain the necessary insurance to protect the interests of the bank from which they obtained a loan and that it did not impose any obligation on the Luxury Finance Defendants with respect to breach of warranty insurance.

This court notes that the sole authority cited by the Luxury Finance Defendants for this proposition is *Care Flight Air Ambulance*, a 1992 case construing a nonmaritime insurance policy under Texas law. That case explains that a breach of warranty endorsement protects a mortgagee (i.e., a lender), not the named insured (usually a borrower) in the underlying policy. The case cites other cases and says that Texas construes breach of warranty endorsements in a manner consisotent with most other courts nationwide. The decision is primarily concerned with whether terms in the underlying policy apply to the breach of warranty endorsement, concluding that they do not because the endorsement is a separate contract between the insurer and the

15

lienholder that is unaffected by the contract between the insurer and the borrowing mortgagor.

The Alberts present no case or other authority suggesting that the *Care Flight Air Ambulance* description of breach of warranty insurance is inapplicable to the maritime context or to what the Alberts allegedly engaged the Luxury Finance Defendants to obtain for them in the form of a breach of warranty endorsement. The Alberts did argue at the hearing on the motion to dismiss that they too would have been protected by breach of warranty insurance. While the court noted at the hearing that the Alberts provided no basis for that argument, this court is cognizant that, because there has not yet been an opportunity for discovery, the Alberts may not yet have in hand a sample breach of warranty endorsement from ION Insurance Company or any other insurer.

Insurance coverage disputes turn largely on the language in insuring instruments, and this court has no such language before it. Different instruments may have different language, and the same insurer may use different language at different times. The Luxury Finance Defendants are asking this court to rely on a 1992 case construing language that may not have been in an actual endorsement had one been procured here. This court therefore hesitates to rely on the single case submitted by the Luxury Finance Defendants to dismiss the breach

16

of contract claim as relying on insurance that would provided no
benefit at all to the Alberts.  It may indeed be the case that,
in 2022 ION or another insurer would have issued breach of
warranty insurance tracking the Texas insurance discussed in the
1992 case.  But this court cannot tell that.

The Luxury Finance Defendants make the additional
argument that the structure of the Agreement itself makes it
clear that they had no duty to procure a breach of warranty
endorsemehnt.  *Nicol v. Kā'anapali Golf Ests. Cmty. Ass'n, Inc.*,
Civ. No. 17-00251 JMS-KJM, 2021 WL 4037427, at *6 (D. Haw. Sept.
3, 2021) ("[A] written contract must be read as a whole and every
part interpreted with reference to the whole, with preference
given to reasonable interpretations."); *Maui Land & Pineapple Co.
v. Dillingham Corp.*, 67 Haw. 4, 11, 674 P.2d 390, 395 (1984)
("[A]n agreement should be construed as a whole and its meaning
determined from the entire context and not from any particular
word, phrase, or clause.").  The Agreement was sent to the
Alberts to inform them of the conditions they needed to satisfy
to obtain the loan that the Luxury Financial Group was to secure
for them.  The first paragraph of the Agreement informs the
Alberts of the approval of their loan application, "subject to
the following documentation."  ECF No. 101-4, PageID # 917.  The
list of "prior to closing requirements" identifies specific
documentation, with "proof of acceptable insurance coverage,"

including a "breach of warranty insurance endorsement," appearing as the second item on that list as a requirement *Id.*

The reference to "acceptable insurance coverage" may well be a reference to what would be acceptable to the lender, which would have had no say in what was acceptable coverage for a borrower to the extent the lender was unaffected.

The Luxury Finance Defendants refer to the "canon of construction denominated *noscitur a sociis*," which "provides that the meaning of words may be determined by reference to their relationship with other associated words and phrases." *Fed. Ins. Co. v. Hawaiian Elec. Indus., Inc.*, No. 94-00125 HG, 1997 WL 35428196, at *11 (D. Haw. Dec. 23, 1997); *State v. Deleon*, 72 Haw. 241, 244, 813 P.2d 1382, 1384 (1991) (quoting *Advertiser Publ'g. Co. v. Fase*, 43 Haw. 154, 161 (Haw. Terr. 1959)) ("[T]he meaning of a word is to be judged by the company it keeps."); *Territory ex rel. Moir v. Knell*, 17 Haw. 135, 138 (Haw. Terr. 1905) ("In statutes, as well as in contracts, words are construed with reference to their collocation by the rule *noscitur a sociis*"). Here, the Luxury Finance Defendants assert, that canon says that the "prior to closing requirements" should be interpreted in relationship to each other.

Of the seven "prior to closing requirements" listed in the Agreement, the Alberts are clearly responsible for four of them:  providing proof of down payment,

18

guaranteeing the loan, paying the Luxury Financial Group's processing fee, and paying the documentary stamp tax.  ECF No. 101-4, PageID # 917.  The Agreement provides that another requirement—U.S. Coast Guard documentation—will be completed by an "AVDA doc agent."  ECF No. 101-4, PageID # 917.  Another "requirement" is really a condition precedent that notes that certain financial requirements would apply if the boat was moored outside of the United States.  ECF No. 101-4, PageID # 917.

The motion to dismiss notes that, with four of the seven requirements being the Alberts' responsibility, and with two other requirements clearly assigned to another entity or not actually involving requirements at all, it would make little sense for the parties to have "slipped one item into that list that, unlike all others, both parties expected the Luxury Financial Group to be responsible for." ECF No. 101-1, PageID # 899.

In their Opposition, the Alberts do not respond directly to this part of the motion to dismiss.  *See* ECF No. 103, PageID #s 939-41.  Instead, the Alberts refer to the Luxury Financial Group's marketing materials in arguing that the Luxury Financial Group was responsible for obtaining breach of warranty insurance.  ECF No. 106, PageID # 963. The marketing materials do not actually mention such an

alleged responsibility; they instead contain generic marketing statements, such as that the Luxury Financial Group offers "outstanding service," "sound advice," and "comprehensive yacht, aircraft, and RV financing solutions." ECF No. 101-3, PageID # 907. The Alberts recognize as much in their SAC and Opposition. ECF No. 84, PageID #s 751-52; ECF No. 103, PageID #s 933-34.

The *noscitur a sociis* canon of construction may be helpful here, but that does not mean that the canon necessarily controls here. Rules of construction are guides, not binding law. They are most useful in the absence of evidence of what the parties intended. If a document does not expressly state a proposition, no canon of construction can create a controlling inference contrary to evidence that the parties meant something other than what the canon would indicate. The Agreement possibly should be read consistently with the canon, but the parties have not had a sufficient opportunity to provide this court with evidence of that.

Notably, in the part of their moving papers urging this court to rely on the canon, the Luxury Finance Defendants cite *Nicol,* a summary judgment ruling, and the portion of the *Federal Insurance* decision that also represents a summary judgment ruling. The Luxury Finance Defendants also cite the *Deleon* case, involving an appeal

taken following a conviction, and *Knell*, which was a proceeding on a writ of quo warranto.  This court points to the procedural posture of those cases in concluding that, if the canon of construction should control at the motion to dismiss stage, that proposition is not evident from the authorities cited by the Luxury Finance Defendants in the memorandum submitted with their motion.  The Luxury Finance Defendants cite additional cases in footnote 2 of their reply memorandum, ECF No. 106, PageID #966, but all of those cases similarly dealt with summary judgment motions.

There is a reason that courts typically cite canons of construction in summary judgment rulings: courts look to canons when a text is not entirely self-explanatory and the evidence in the record is insufficient to clarify the meaning of the text.  Evidence is usually gathered through discovery occuring in advance of the filing of a summary judgment motion, not in connection with a motion to dismiss.  Thus, it can be said, "Canons generally should be a *last resort, not a first one."*  Anita Krishnakumar & Victoria Nourse, *The Canon Wars*, 97 Tex. L. Rev. 163, 169 (2018)(emphasis in original).  Canons are "judicial assumptions about meaning -- default rules.  Default rules are second-best guesses or policies that apply when all first-best evidence fails."  *Id*.  The Luxury Finance

Defendants are prematurely giving primacy to a canon of construction.

This court recognizes that the email chain may well be read as indicating that supplying "proof of acceptable insurance coverage" was not the Luxury Finance Defendants' responsibility.  In the email chain, Marrero, a Luxury Financial Group representative, reached out to AFN President Steve Bonner, as requested by Kevin Albert, to get the Alberts' "insurance quote and binder."  ECF No. 101-5, PageID # 925.  In other words, Marrero reached out to Bonner, the Alberts' insurance broker, to get the insurance information referred to in the "prior to closing requirements" set forth in the Agreement.  *See id.*  But this may simply suggest that the Alberts were looking to Bonner and the Luxury Finance Defendants for overlapping services.

In sum, the Luxury Finance Defendants do not establish that they are entitled to dismissal of the breach of contract claim.

### B.   Negligence Claim.

With respect to Count V, the Alberts' negligence claim, this court grants the motion to dismiss.

The Alberts appear to argue that the Luxury Finance Defendants acted negligently by failing to secure a breach of warranty insurance endorsement.  ECF No. 84,

PageID #s 753, 757-58.  The Luxury Finance Defendants
contend that the Alberts' negligence claim essentially
alleges that the Luxury Finance Defendants committed
professional negligence.  ECF No. 101-1, PageID # 900.  The
Luxury Finance Defendants point out that a professional has
"no duty to assist or advise a client in matters outside the
scope of the professional's engagement."  *Id.*  (quoting
Restatement (Third) of Torts: Liab. for Econ. Harm § 4 cmt.
d (2020)).  Accordingly, they argue that they cannot be held
liable for professional negligence because they had no duty
to procure insurance with the requisite breach of warranty
insurance endorsement.

The Luxury Finance Defendants' argument posits
that the scope of their engagement is clear from the
Agreement.  As this court noted in addressing the breach of
contract claim, this court does not read the Agreement as
possessing the clarity asserted by the Luxury Finance
Defendants.  Nevertheless, this court dismisses the
negligence claim because the allegations in Count V are
flatly contradicted by the record, the authenticity of which
the Alberts concede.

The negligence claim rests on the assertion that,
after noticing that the certificate of insurance did not
contain the required breach of warranty insurance

23

endorsement, the Luxury Finance Defendants' representative
failed to follow up.  Even if, as the Alberts assert,
obtaining breach of warranty insurance was the Luxury
Finance Defendants' job, the precise breach of duty alleged
in the SAC was a failure to follow up as allegedly evidenced
in part of an email chain.  The continued email chain shows
that there was indeed follow up, negating the particular
negligence asserted.

     A different negligence claim was described by the
Alberts at the hearing on the motion to dismiss.  In this
order, the court addresses the SAC, not the oral modification
raised at the hearing.

     At the hearing, the Alberts claimed that the
Luxury Finance Defendants had received a fraudulent
certificate of insurance from Bonner, who, the Alberts said,
never actually procured the breach of warranty insurance
reflected in the endorsement included in the certificate of
insurance.  The Alberts asserted that the Luxury Finance
Defendants should not have relied on the certificate of
insurance and should have instead demanded to see the actual
insurance policy.  According to the Alberts, such a demand
would have revealed that the endorsement did not exist.

     The Alberts have cited no law establishing a duty
to look beyond a certificate of insurance.  Nor did the

24

Alberts allege such a duty in the SAC.  It is unclear to
this court what purpose a certificate of insurance serves if
the recipient of a certificate of insurance is duty-bound to
question the certificate and to review the documents on
which the certificate purports to be based.

Countless common transactions rely on
verifications such as notarizations of signatures and
certifications of documents.  If a defect is clear on the
face of a verification, certainly its validity may be
questioned.  But the Alberts provide no support for their
assertion that, in the absence of such an observable defect,
the recipient has a duty to question the validity of the
verification.  The SAC does not suggest any defect that was
clear from the face of the certificate of insurance.  At the
very least, the SAC fails to put the Luxury Finance
Defendants on notice of any duty they owed in this regard.
The contours of this new allegation against the Luxury
Finance Defendants cannot be discerned from the SAC, which
instead refers to part of an email chain that the Alberts
cite as indicating that the Luxury Finance Defendants failed
to obtain a certificate of insurance with a breach of
warranty insurance endorsement, not that the Luxury Finance
Defendants failed to go behind the certificate.  In
dismissing Count V, this court is not reading Count V as

25

stating any claim relating to an alleged duty to look behind a certificate of insurance at the underlying policy.

### C.   Breach of Fiduciary Duty Claim.

The Alberts assert a breach of fiduciary duty claim in Count VII.  This court denies the motion to dismiss.

The Alberts appear to allege that the Luxury Finance Defendants breached a duty they owed to the Alberts as their agent by failing to secure breach of warranty insurance.  ECF No. 84, PageID #s 753, 759-60.

While the court agrees with the Luxury Finance Defendants' argument that the "existence and extent of the duties of the agent to the principal are determined by the terms of the agreement between the parties,"  ECF No. 101-1, PageID # 901 (quoting Restatement (Second) of Agency § 376 (1958)), the written Agreement is not clear enough to support a conclusion that the Luxury Finance Defendants made no agreement giving rise to any fiduciary duty.

### V.      CONCLUSION.

The court GRANTS the Luxury Finance Defendants' motion to dismiss with respect to Count V (the negligence claim). The court DENIES the Luxury Finance Defendants'

motion with respect to Count II (the breach of contract claim) and Count VII (the breach of fiduciary duty claim).

      The Alberts may seek to revise their allegations against the Luxury Finance Defendants within the requisite limitations period and within the deadlines, requirements, and procedures set by court rules or court order.  If they do so seek, they must, of course, satisfy the *Twombly/Iqbal* pleading standard.

      IT IS SO ORDERED.

      DATED: Honolulu, Hawaii, August 14, 2024.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

*Kevin S. Albert and Kimberly Leblanc Albert, Trustees of the Albert Revocable Trust UAD 6/3/1997 and Restated 1/7/2020*, Civ. No. 23-00221 SOM-WRP; ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS LUXURY FINANCIAL GROUP, LLC, AND NOELLE NORVELL'S MOTION  TO DISMISS SECOND AMENDED COMPLAINT