IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| KEVIN S. ALBERT AND KIMBERLY LEBLANC ALBERT, *Trustees of the Albert Revocable Trust UAD 6/3/1997 and Restated 1/7/2020*,<br><br>Plaintiffs,<br><br>vs.<br><br>EDWARD WILLIAM, SL, *et al.*,<br><br>Defendants. | Case No. 23-cv-00221-DKW-WRP<br><br>**ORDER (1) GRANTING DEFENDANTS LUXURY FINANCIAL GROUP, NOELLE NORVELL, ION INSURANCE COMPANY, ALLIED FINANCIAL NETWORK, AND STEVE BONNER'S MOTIONS FOR SUMMARY JUDGMENT; (2) GRANTING DEFENDANT ION INSURANCE GROUP, S.A.'S MOTION TO DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND; AND (3) DEEMING PLAINTIFFS KEVIN AND KIMBERLY ALBERT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT ION INSURANCE GROUP, S.A.'S COUNTER MOTION FOR PARTIAL SUMMARY JUDGMENT MOOT AND WITHDRAWN** |

Plaintiffs Kevin and Kimberly Albert assert various claims against

Defendants—an assorted group of insurers, brokers, and financiers—arising out of

the loss of the *Nakoa*, a 94-foot yacht, and the denial of insurance coverage as to

the same.  Defendants Luxury Financial Group ("LFG"), Noelle Norvell, ION

Insurance Group, S.A. ("ION S.A."), ION Insurance Company, Inc. ("ION USA"),

Allied Financial Network ("AFN"), and Steve Bonner now move for summary judgment and/or for dismissal, raising a number of challenges which the Alberts oppose.

Having reviewed the parties' briefing, evidentiary submissions, and the record generally, the Court finds that LFG, Norvell, ION USA, AFN, and Bonner are entitled to summary judgment on all claims and that the Alberts' claims against ION S.A. must be dismissed pursuant to the doctrine of *forum non conveniens*. Specifically, upon review of the parties' evidentiary submissions, it is clear that: (1) ION USA never issued or held the insurance policy for the *Nakoa*; (2) the *Nakoa* insurance policy issued by ION S.A. contains a forum selection clause that requires all policy-related disputes to be litigated in Costa Rica; (3) AFN and Bonner are neither insurers nor parties to the insurance contract; and (4) the Alberts are unable to establish that LFG, Norvell, AFN, and/or Bonner's various alleged failures *caused* the ultimate decision to deny coverage for the loss of the *Nakoa*—something which is fatal to the remainder of their claims. As a result, for the reasons discussed more fully below, Defendants' motions for summary judgment, Dkt. Nos. 256, 260, 262, and motion to dismiss, Dkt. No. 258, are GRANTED.

## FACTUAL & PROCEDURAL BACKGROUND[1]

## I.    Insurance, Financing, and Purchase of the *Nakoa*

In 2022, Plaintiffs Kevin S. Albert and Kimberly Leblanc Albert met Jim

Jones, the owner of Noelani Yacht Charters ("Noelani"), and his wife, Isabelle

Jones, who was Noelani's only other employee.  AFN CSF at ¶¶ 3–4, 6;[2] Alberts'

Response to AFN CSF at ¶¶ 3–4, 6; Depo. of Jim Jones at 19:1–3, 20:7–12, Dkt.

Nos. 259-5 & 269.[3]  Throughout that year, the Alberts chartered several voyages

off the coasts of O'ahu and Maui with the Joneses and Noelani.  *See* LFG CSF at

¶ 1; Alberts' Response to LFG CSF at ¶ 1; Depo. of Kevin Albert at 21:12–24:9,

Dkt. Nos. 257-4, 257-5, 257-6, 257-7, 259-4, 270-1 & 285-6.  During one of those

---

[1]The following undisputed facts are taken from Luxury Financial Group and Noelle Norvell's
Concise Statement of Facts ("LFG CSF"), Dkt. No. 257, Alberts' Response to LFG CSF, Dkt.
No. 279, ION Insurance Group, S.A.'s Concise Statement of Facts ("ION S.A. CSF"), Dkt. No.
259, Alberts' Counterstatement and Response to ION S.A. CSF ("ACSF in Opp. to ION S.A."),
Dkt. No. 281, ION Insurance Group, S.A.'s Concise Statement of Facts in Reply ("ION S.A.
Reply CSF"), Dkt. No. 292, ION Insurance Company's Concise Statement of Facts ("ION USA
CSF"), Dkt. No. 261, Alberts' Response to ION USA CSF, Dkt. No. 283, ION Insurance
Company's Concise Statement of Facts in Reply, Dkt. No. 294 ("ION USA Reply CSF"), Allied
Financial Network and Steve Bonner's Concise Statement of Facts ("AFN CSF"), Dkt. No. 265,
Alberts' Response to AFN CSF, Dkt. No. 285, AFN and Bonner's Reply to Alberts' Response to
AFN CSF ("AFN Reply CSF"), Dkt. No. 290, and the exhibits filed in support of each.
[2]The Alberts argue that the AFN CSF should be "STRICKEN and ignored by this Honorable
Court" as "it sets forth forty-one (41) factual allegations, many – if not most – of which are **not**
'essential for the court's determination of the motion,' and, as such, fails to comply with Local
Rules for the US District Court for the District of Hawaii 56.1(a)."  Alberts' Response to AFN
CSF at 2–3.  Given, however, that the Alberts do not identify which of AFN and Bonner's 41
factual allegations are "not essential for the court's determination of the motion," the Court will
not guess and declines to strike and/or ignore the AFN CSF.
[3]With the exception of transcripts, in citing to the parties' exhibits and briefs, the Court utilizes
the page numbers assigned by CM/ECF in the top right corner of each page, rather than the page
numbers at the bottom of each page, because the latter does not extend consistently throughout
each document.

trips, Jim approached Kevin with a business proposal—Kevin would purchase a new vessel to expand Noelani's operations on Maui, and Jim would manage the yacht in return.  LFG CSF at ¶ 2; Alberts' Response to LFG CSF at ¶ 2; J. Jones Depo. at 22:6–22, 26:2–27:7; Albert Depo. at 26:5–27:21.  Kevin agreed and purchased the *Nakoa*, a 94-foot yacht, in the name of the Albert Revocable Trust ("the Trust").[4]  LFG CSF at ¶ 3; Alberts' Response to LFG CSF at ¶ 3; Albert Depo. at 28:2–4.  To aid him in doing so, he hired Luxury Financial Group—a brokerage company which specialized in assisting clients with the financing of luxury vessels.  LFG CSF at ¶ 5;[5] Decl. of Noelle Norvell at ¶ 3, Dkt. No. 257-2.

During Kevin's initial conversations with Noelle Norvell, LFG's president, she advised him that to obtain a loan, the *Nakoa* would have to first be insured with a policy that met certain requirements including, among other things, breach of warranty coverage.[6]  LFG CSF at ¶ 8; Alberts' Response to LFG CSF at ¶ 8;

---

[4]At the time of its purchase, the *Nakoa* was named the "*Lady L*."  Albert Depo. at 32:8–18; Depo. of Steve Bonner at 38:14–20, Dkt. No. 283-4.  For the sake of clarity, the Court will refer to it as the *Nakoa* throughout.

[5]The Alberts partially dispute this, claiming that in addition to providing financing services, "[t]he LFG Defendants hold themselves out as 'experts' who provide . . . 'comprehensive' assistance and full 'support' affiliated therewith."  Alberts' Response to LFG CSF at ¶ 5.  Because this does not actually *contradict* what LFG and Norvell assert, the Court does not further address this so-called dispute.

[6]In the context of a marine insurance agreement, a breach of warranty endorsement is a provision which protects the lender should the owner or operator of the vessel breach a warranty in the insurance policy and void the vessel's coverage.  *See* LFG CSF at ¶ 9; Alberts' Response to LFG CSF at ¶ 9; Decl. of Michael Smith at ¶¶ 3–4, Dkt. Nos. 257-3 & 285-9; Alberts' Response to LFG CSF Ex. 1 at 4, Dkt. No. 279-2.  A breach of warranty endorsement permits the lender to obtain some amount of recovery from the insurer—typically limited to the outstanding balance of the loan.  *See* Smith Decl. at ¶ 4; Alberts' Response to LFG CSF Ex. 1 at 4.

Norvell Decl. at ¶ 3.   Both the Alberts and the Joneses understood that it was the Joneses' responsibility to secure such insurance.  AFN CSF at ¶ 10; Alberts' Response to AFN CSF at ¶ 10; LFG CSF at ¶ 4; Alberts' Response to LFG CSF at ¶ 4; LFG CSF Ex. C, Dkt. No. 257-9; Albert Depo. at 29:15–24, 46:8–19.  Isabelle therefore contacted Steve Bonner—the president of Allied Financial Network—to obtain a policy for the *Nakoa*.  AFN CSF at ¶ 11;[7] AFN CSF Ex. 10 at 3, Dkt. No. 270-5; J. Jones Depo. at 27:8–14; I. Jones Depo. at 20:23–21:24; LFG CSF Ex. D, Dkt. No. 257-10.  In doing so, Isabelle provided a list of loan insurance requirements to Bonner—including, among other things, breach of warranty coverage.  AFN CSF at ¶ 16; Alberts' Response to AFN CSF at ¶ 16; AFN CSF Ex. 10 at 3; LFG CSF at ¶ 13; Alberts' Response to LFG CSF at ¶ 13; LFG CSF Ex. D at 3.  Isabelle also sent Bonner an insurance application, signed by Jim, which stated that the *Nakoa* was owned by Noelani.  AFN CSF at ¶ 12; Alberts' Response to AFN CSF at ¶ 12; AFN CSF Ex. 8 at 2, Dkt. No. 270-3.

On October 14, 2022, LFG informed the Alberts that the Trust had been conditionally approved by USA Specialty Lending for a loan to purchase the *Nakoa*.  LFG CSF at ¶ 14; Alberts' Response to LFG CSF at ¶ 14; LFG CSF Ex. E

---

[7]The Alberts partially dispute this, claiming that "[i]nsurance was to be purchased for the Vessel *MV Nakoa*, **not** the entity Noelani Yacht Charters."  Alberts' Response to AFN CSF at ¶ 11.  These allegations, however, are contradicted by the very transcripts to which the Alberts cite in support of their argument.  *See* Depo. of Isabelle Jones at 20:23–21:11, Dkt. Nos. 270, 257-24, 257-25 & 257-26.  Accordingly, there is no dispute in this regard.

at 2–3, Dkt. No. 256-11; Norvell Decl. at ¶ 5.  The conditional approval letter

specified that final loan approval was dependent on the Trust meeting several

lender requirements prior to closing including, *inter alia*, "**[p]roof of acceptable

insurance coverage with a deductible not more than 2% and proper

coverages, including a breach of warranty insurance endorsement[.]**"  LFG

CSF at ¶¶ 14–15; Alberts' Response to LFG CSF at ¶¶ 14–15; LFG CSF Ex. E at

3; Albert Depo. at 49:2–8.  Kevin then forwarded the conditional approval letter to

Jim to satisfy the insurance requirements, telling him "[t]his is the info the bank

will need."  LFG CSF at ¶ 16;[8] LFG CSF Ex. F at 2, Dkt. No. 257-12; Albert

Depo. at 51:8–14, 53:8–54:8.

LFG then continued to work to finalize the loan.  LFG CSF at ¶ 17; Alberts'

Response to LFG CSF at ¶ 17.  During that period, Norvell frequently contacted

Kevin to remind him that he still needed to obtain insurance for the *Nakoa*,

including breach of warranty coverage.  LFG CSF at ¶¶ 17, 20; Alberts' Response

to LFG CSF at ¶¶ 17, 20; Norvell Decl. at ¶ 8.  Kevin, in turn, reached out to Jim

to ensure that the Trust was on track to meet LFG and USA Specialty Lending's

---

[8]The Alberts partially dispute this, contending that "[g]iven the uniqueness of breach of warranty provisions, it is incumbent upon the individual or entity requiring the inclusion thereof (i.e. the LFG Defendants) that the actual content of such a provision be reviewed to determine what – exactly – is in said endorsement."  Alberts' Response to LFG CSF at ¶ 16.  Whether or not that is true, however, has *nothing* to do with the actual fact asserted—that is, that Kevin forwarded the list of final loan approval requirements to Jim.  *See* LFG CSF at ¶ 16.  The Court therefore does not address this "dispute" any further.

requirements.  LFG CSF at ¶¶ 18–21; Alberts' Response to LFG CSF at ¶¶ 18–21;

LFG CSF Ex. G at 10–13, 18, Dkt. Nos. 257-13, 257-14 & 257-15; Albert Depo. at

63:8–66:18.

On October 24, 2022, in anticipation of the approaching closing date for the

sale of the *Nakoa*, Heidy Marrero—a LFG employee—reached out to Kevin to

obtain the contact information for the Trust's insurance agent.  LFG CSF ¶ 22;

Alberts' Response to LFG CSF at ¶ 22; LFG CSF Ex. I at 7–8, Dkt. No. 257-16.

Kevin referred Marrero to Jim, who informed her that the Trust's insurance agents

were Bonner and AFN.  LFG CSF at ¶ 23; Alberts' Response to LFG CSF at ¶ 23;

LFG CSF Ex. I at 4–5; Albert Depo. at 86:9–87:16.  Marrero then contacted

Bonner to confirm that the Trust had obtained insurance that met USA Specialty

Lending's requirements, including a breach of warranty endorsement in an amount

no less than the amount of the loan.  Alberts' Response to AFN CSF Ex. B, Dkt.

No. 285-3; LFG CSF Ex. J at 4–6, Dkt. No. 257-17.  Although Bonner had

obtained an insurance policy ("the Policy") for the *Nakoa* from ION Insurance

Group, S.A. through its agent Edward William,[9] the Policy did not include a

breach of warranty endorsement.  AFN CSF at ¶ 20; Alberts' Response to AFN

CSF at    ¶ 20; AFN CSF Ex. 12, Dkt. No. 270-7; LFG CSF at ¶ 25; Alberts'

---

[9] As Ion S.A.'s agent, Edward William was authorized "subject to ION's approval or disapproval, to underwrite policies, to investigate claims, to collect premium dollars from insureds, things like that."  Depo. of James Robinson at 11:11–17, Dkt. Nos. 259-2, 261-2, 270-14, 283-3 & 285-8.

Response to LFG CSF at ¶ 25; ION S.A. CSF Ex. 1, Dkt. No. 259-1; Alberts'

Response to ION USA CSF Ex. A, Dkt. No. 283-2; First Decl. of Opal Whitney at

¶ 5, Dkt. No. 304; Robinson Depo. at 13:2–19. Nevertheless, Bonner provided

LFG with a certificate of insurance that incorrectly represented that the Policy

contained the required breach of warranty endorsement. AFN CSF at ¶¶ 17, 20;

Alberts' Response to AFN CSF at ¶¶ 17, 20; AFN CSF Ex. 11, Dkt. No. 270-6;

LFG CSF at ¶ 25; Alberts' Response to LFG CSF at ¶ 25; LFG CSF Ex. J. LFG

then forwarded the certificate of insurance to USA Specialty Lending, which

accepted it in satisfaction of its lending requirements. LFG CSF at ¶ 26; Alberts'

Response to LFG CSF at ¶ 26; Norvell Decl. at ¶ 10. Simultaneously, LFG sent

the Alberts an updated conditional approval letter for their signature which, once

again, set forth the requirement of insurance with breach of warranty coverage.

LFG CSF at ¶ 27; Alberts' Response to LFG CSF at ¶ 27; Norvell Decl. at ¶ 11;

LFG CSF Ex. K at 2, Dkt. No. 257-18. The Alberts signed the letter on October

27, 2022, and the Trust subsequently closed on the *Nakoa*. AFN CSF at ¶ 9;

Alberts' Response to AFN CSF at ¶ 9; LFG CSF Ex. K at 2.

Thereafter, on December 29, 2022, the Trust entered into an agreement with

Jim and Noelani for the sale and operation of the *Nakoa*. AFN CSF at ¶ 8; Alberts'

Response to AFN CSF at ¶ 8; AFN CSF Ex. 7, Dkt. No. 270-2. Under that

agreement, Noelani would purchase the *Nakoa* from the Trust for $1.45 million

pursuant to a fifteen-year installment plan, as well as manage and operate the yacht

during the same period.  AFN CSF Ex. 7 at 2, 47–52; LFG CSF at ¶ 30; Alberts'

Response to LFG CSF at ¶ 30; Albert Depo. at 33:8–10.

## II.    **The Grounding**

On February 18, 2023, the Joneses met with the Alberts in Lahaina, Maui to

discuss a potential partnership between Noelani and a private jet service.  AFN

CSF at ¶ 21; Alberts' Response to AFN CSF at ¶ 21; AFN Reply CSF at ¶ 21; J.

Jones Depo. at 70:4–71:10.  Following that meeting, the Joneses asked Captain

Kimberley Kalani Higa—who was not approved under the Policy to captain the

*Nakoa*[10]—to take them on the *Nakoa* from its mooring in Lahaina up the Maui

coastline to Honolua Bay.[11]  AFN CSF at ¶¶ 22, 27; Alberts' Response to AFN

CSF at ¶¶ 22, 27; J. Jones Depo. at 73:2–17, 76:14–23.  Despite rules limiting

mooring in Honolua Bay to 2.5 hours per vessel per day, Captain Higa moored the

*Nakoa* overnight on both February 18, 2023 and February 19, 2023.  AFN CSF at

¶¶ 23, 29; Alberts' Response to AFN CSF at ¶¶ 23, 29; J. Jones Depo. at 77:5–24.

Early in the morning of February 20, 2023,[12] the *Nakoa* broke free of its

mooring and ran aground in Honolua Bay.  AFN CSF at ¶ 24; Alberts' Response to

---

[10]Captain Joey Bardouche was listed as the approved captain of the *Nakoa* under the Policy.
AFN CSF at ¶ 27; Alberts' Response to AFN CSF at ¶ 27.
[11]Although Captain Higa had previously operated the *Nakoa*, he had never done so in Honolua
Bay.  *See* AFN CSF at ¶ 27; Alberts' Response to AFN CSF at ¶ 27.
[12]There is some dispute in the record as to the exact time that the mooring failed.  *Compare*
Second Amended Complaint ("SAC") at ¶ 37 (alleging Jones heard the anchor alarm at 5:20

AFN CSF at ¶ 24; AFN CSF Ex. 14 at 10; ION S.A. CSF Ex. 6 at 10.  Over the next several days, various persons and entities, including Jim, Noelani, the State of Hawai‘i Department of Land and Natural Resources ("DLNR"), and the United States Coast Guard, attempted to salvage the *Nakoa*.  AFN CSF at ¶ 30; Alberts' Response to AFN CSF at ¶ 30; SAC at ¶ 41, Dkt. No. 84.  These attempts were unsuccessful, and the Coast Guard/DLNR[13] ultimately federalized the *Nakoa* and scuttled it off the coast of Maui on March 5, 2023, resulting in a total loss.  AFN CSF at ¶ 30; Alberts' Response to AFN at ¶ 30; SAC at ¶¶ 42, 44.

## III.  **The Insurance Claim**

On February 20, 2023—the same day as the grounding—the Alberts filed a claim for the *Nakoa* under the Policy.  AFN CSF at ¶ 31; Alberts' Response to AFN CSF at ¶ 31; AFN CSF Ex. 14; LFG CSF at ¶ 32; Alberts' Response to LFG CSF at ¶ 32; ION S.A. CSF Ex. 6.  In response, ION S.A. initiated an investigation into the grounding and the claim through Edward William.  AFN CSF at ¶ 32;[14]

---

a.m.), *with* AFN CSF Ex. 14 at 10, Dkt. No. 270-9 *and* ION S.A. CSF Ex. 6 at 10, Dkt. No. 259-6 (claiming that Jones heard the alarm at 5:40 a.m.).  Because this inconsistency is inconsequential to the determination of the ultimate issues, the Court need not, and does not, resolve it.

[13]The Coast Guard first federalized the *Nakoa* to ensure the removal of fuel, batteries, and other hazardous material.  *See* AFN CSF Ex. 18 at 9, Dkt. No. 270-12.  Although control of the vessel would then normally be returned to its owner, Jim and Noelani indicated that they would be unable to effectuate and fund salvage efforts, and thus, the Coast Guard transferred control to DLNR.  *See id.* at 9 n.23.

[14]The Alberts dispute this statement of fact.  *See* Alberts' Response to AFN CSF at ¶ 32.  The deposition testimony to which they cite, however, is either irrelevant or *confirms* that Edward William conducted the investigation.  *Compare id.*, *with* Robinson Depo. at 38–39, 49–50, *and* AFN Reply CSF at ¶ 32.  As such, there is no substantiated dispute in this regard.

Robinson Depo. at 23:20–24:25.  During the course of the investigation, ION S.A. and Edward William discovered that the named applicant and insured—Noelani— was not the true owner of the *Nakoa*.  AFN CSF at ¶ 33;[15] Robinson Depo. at 25:23–27:10.  As a result, the Policy was amended on March 16, 2023 to name the Trust as the insured party.  AFN CSF at ¶ 34;[16] AFN CSF Ex. 16, Dkt. No. 270-10; Alberts' Response to ION USA CSF Ex. D at 1–2, Dkt. No. 283-5.

On April 26, 2023, ION S.A. and Edward William denied coverage for the loss of the *Nakoa*.  LFG CSF at ¶ 33; Alberts' Response to LFG CSF at ¶ 33; LFG CSF Ex. L, Dkt. No. 257-19; AFN CSF Ex. 17, Dkt. No. 270-11  In doing so, they cited nine principal justifications, including that: (1) Captain Higa was unqualified and unapproved to take charge of the *Nakoa*; (2) Captain Higa failed to oversee or attach the mooring; (3) the *Nakoa* was too large to be moored in Honolua Bay and exceeded the authorized time limit; (4) the circumstances surrounding the grounding of the *Nakoa* breached two of the general exclusions set forth in the Policy; (5) the installment premiums were not immediately paid in full following

---

[15]The Alberts partially dispute this.  Alberts' Response to AFN CSF at ¶ 33.  Their reasons for doing so, however, are unclear, particularly given that the deposition testimony they cite *supports* this statement of fact.  *Compare id., with* Robinson Depo. at 26:1–27:21, *and* AFN Reply CSF at ¶ 33.
[16]The Alberts also partially dispute this statement of fact, contesting that "[a]t all times relevant, the Policy should have reflected that the Trust was the named insured for the Policy."  Alberts' Response to AFN CSF at ¶ 33.  Whether or not that is true, however, has nothing to do with the actual statement of fact—*i.e.*, that the Policy was amended after the grounding to add the Trust as the named insured.  *See* AFN Reply CSF at ¶ 34.

notification of the grounding; (6) there were no proactive steps taken to minimize

damages after the grounding, thereby leading to the complete loss of the *Nakoa*;

(7) ION S.A. and/or Edward William were not notified as to the

additional/replacement captain for the *Nakoa* (*i.e.,* Captain Higa); (8) a full survey

was not provided, despite being requested; and (9) none of the participants signed a

waiver prior to the charter.  AFN CSF at ¶ 35;[17] AFN CSF Ex. 17 at 2–3; LFG CSF

Ex. L at 2–3.

## IV.    **The Lawsuit**[18]

On May 23, 2023, the Alberts initiated this lawsuit by filing a Complaint

against Edward William,[19] ION S.A., AFN, and Bonner.  Dkt. No. 1.  Shortly

thereafter, on July 24, 2023, the Alberts filed a First Amended Complaint, adding

---

[17]The Alberts also dispute this, arguing that they sent a rebuttal letter disputing Edward William and ION S.A.'s decision to deny coverage.  Alberts' Response to AFN CSF at ¶ 35.  The existence of the rebuttal letter, however, does not change the fact that Edward William and ION S.A. denied coverage or that they provided certain reasons for doing so.  *See* Alberts' Response to AFN CSF Ex. F at 1, Dkt. No. 285-7 (acknowledging that "[t]his letter is specifically prepared in response to your letter to Jim Jones dated April 26, 2023, in which you, on behalf of Edward William[] SL, ('Company'), listed a number of reasons purportedly justifying the Company's denial of coverage[.]"); AFN Reply CSF at ¶ 35.  Indeed, the Alberts appear to not have any issue with this same statement in other Defendants' concise statements of fact.  *See, e.g.*, LFG CSF at ¶ 33; Alberts' Response to LFG CSF at ¶ 33.

[18]In addition to the instant suit, the Alberts are involved in a number of parallel actions arising out of these events, including an administrative enforcement action brought by DLNR, *see* AFN CSF at ¶ 36, Alberts' Response to AFN CSF at ¶ 36, AFN CSF Ex. 18, ACSF in Opp. to ION S.A Ex. B, Dkt. No. 281-3, and a federal suit against Jim Jones, Captain Higa, and Noelani Yacht Charters, *see Albert v. Noelani Yacht Charters, LLC*, Civ. No. 23-00132-DKW-RT.

[19]Edward William was terminated from this case following the Alberts' repeated failures to serve it.  *See* Dkt. Nos. 274 & 276.

ION Insurance Company[20] as a Defendant.  Dkt. No. 13.  On August 23, 2023,

ION USA moved to dismiss the FAC.  Dkt. No. 19.  The then-presiding judge[21]

indicated that she would treat it as a motion for summary judgment, and

subsequently denied it.  Dkt. Nos. 25 & 43.  The Alberts then filed the operative

Second Amended Complaint on May 8, 2024, which added Defendants Luxury

Financial Group and Noelle Norvell.  Dkt. No. 84.  Therein, the Alberts allege the

following counts:

**Count I:** Breach of Contract (Edward William, ION S.A., ION USA, AFN, and Bonner)

**Count II:** Breach of Contract (LFG)

**Count III:** Misrepresentation (AFN and Bonner)

**Count IV:** Negligence (Edward William, ION S.A., ION USA, AFN, and Bonner)

**Count V:** Negligence (LFG and Norvell)

**Count VI:** Breach of Fiduciary Duty (Bonner)

**Count VII:** Breach of Fiduciary Duty (LFG and Norvell)

**Count VIII:** *Respondeat Superior* (AFN)

**Count IX:** *Respondeat Superior* (ION S.A., ION USA, and Edward William)

---

[20]ION USA is the American subsidiary of ION S.A. and is incorporated under the laws of American Samoa.  *See* Second Decl. of Opal Whitney at ¶ 4, Dkt. No. 261; ION USA CSF Ex. 1, Dkt. No. 261-1; Alberts' Response to ION USA CSF Ex. E at 1, Dkt. No. 283-6.
[21]Senior United States District Judge Susan Oki Mollway.  This case was re-assigned to the undersigned on October 25, 2024.  Dkt. No. 153.

**Count X:** Insurance Bad Faith (Edward William, ION S.A., ION USA, AFN, and Bonner)

**Count XI:** Unfair and Deceptive Acts and Practices ("UDAP") (Edward William, ION S.A., ION USA, AFN, and Bonner)

**Count XII**: Exemplary Damages (All Defendants)

SAC at ¶¶ 84–135.

On July 5, 2024, LFG and Norvell moved to dismiss the counts alleged against them—*i.e.*, Counts II, V, VII—for failure to state a claim upon which relief may be granted.  Dkt. No. 101.  On August 14, 2024, the then-presiding judge granted the motion with respect to Count V (Negligence) and denied it with respect to Counts II (Breach of Contract) and VII (Breach of Fiduciary Duty), explaining that while "the allegations in Count V are flatly contradicted by the record," "the Luxury Finance Defendants d[id] not meet their burden of establishing the Alberts' failure to state a breach of contract or breach of fiduciary duty claim against them." Dkt. No. 110 at 3, 23.

On February 10, 2025, the Alberts filed a motion for partial summary judgment as to Count X (Insurance Bad Faith) against ION S.A.  Dkt. No. 225.  In response, on March 14, 2025, ION S.A. filed both a brief in opposition and a counter-motion for partial summary judgment as to Count X against the Alberts. Dkt. No. 238.  The Alberts then filed a reply/counter-motion opposition on March

21, 2025, Dkt. No. 242, and on March 28, 2025, ION S.A. filed a counter-motion reply, Dkt. No. 252.

On April 11, 2025, shortly after briefing was complete on the motions for partial summary judgment, Defendants LFG, Norvell, ION S.A., ION USA, AFN, and Bonner also moved for dismissal and/or summary judgment on all counts remaining against them.  Dkt. Nos. 256, 258, 260 & 262.  The Alberts filed an opposition to each motion on May 16, 2025, Dkt. Nos. 278, 280, 282 & 284, and Defendants replied on May 23, 2025, Dkt. Nos. 287, 288, 291 & 293.  On June 6, 2025, this Court held a hearing on all six motions and took them under advisement. Dkt. No. 297.  This Order now follows.

## STANDARD OF REVIEW

### I.    Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is considered facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* As a result, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," nor do factual allegations that only permit the Court to infer "the mere possibility of misconduct." *Id.* at 678–79 (citing *Twombly*, 550 U.S. at 555).

## II.   <u>Summary Judgment</u>

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Where, as here, "the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party does so, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id.*

In assessing a motion for summary judgment, all facts are construed in the light most favorable to the non-moving party. *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

## DISCUSSION

Defendants move for summary judgment and/or dismissal of all claims, arguing, *inter alia*, that: (1) ION USA is not the insurer of the *Nakoa*; (2) pursuant to a forum selection clause in the Policy, all disputes involving ION S.A. must be litigated in Costa Rica;[22] (3) AFN and Bonner are neither insurers nor parties to the Policy; and (4) the Alberts cannot establish that any action or inaction taken by Defendants, including with respect to the omission of the breach of warranty endorsement, caused their ultimate inability to recover for the loss of the *Nakoa*. The Court addresses each argument in turn.

## I.    ION USA

The Alberts bring the following counts against ION USA: Count I (Breach of Contract); Count IV (Negligence); Count IX (*Respondeat Superior*); Count X (Insurance Bad Faith); Count XI (UDAP); and Count XII (Exemplary Damages). SAC at ¶¶ 84–86, 96–99, 124–135. ION USA moves for summary judgment on each of these counts, claiming that while "[a]ll of Plaintiffs' claims are based on

---

[22]ION S.A. is a Costa Rican entity which is domiciled, registered, and maintains an office in Costa Rica. First Whitney Decl. at ¶ 4.

alleged breaches of the Policy . . . ION U.S.A. did not issue the Policy and never insured [the *Nakoa*]." Dkt. No. 260 at 4–5; *accord* Second Whitney Decl. at ¶ 6. As such, according to ION USA, "Plaintiffs do not have any claims against ION U.S.A. for any alleged breaches of a policy that did insure [the *Nakoa*], and summary judgment should be granted in favor of ION U.S.A. as to all claims against it in the Second Amended Complaint." Dkt. No. 260 at 2.

In response, the Alberts assert that summary judgment is inappropriate because there is a "genuine issue[] of material fact" as to which ION entity held the Policy. Dkt. No. 282 at 2. Specifically, the Alberts point to an email sent by Darren Lewis, an employee of Edward William, to Ed Underwood and Bonner on March 9, 2023, which confirmed that, among other things, "all Steve's clients are being switched from cover with the ION Insurance Group SA to their US subsidiary ION Insurance Company LLC." Alberts' Response to ION USA CSF Ex. E at 1. According to the Alberts, this transfer "includes – although may not be limited to – the Policy covering the vessel." Dkt. No. 282 at 5. As such, because Lewis' email "directly contradict[s]" ION USA's representations, "[a]t minimum, a question of fact exists as to whether it was ION [USA] or ION SA who was and is the insurer under the Policy, . . . and, as such, ION [USA] is **not** entitled to Summary Judgment." *Id.* at 6 (quotation marks and citation omitted).

In making this argument, however, the Alberts neglect to mention one key

- 18 -

detail—that Lewis' email was sent pursuant to a deal struck between ION S.A. and the State of Hawai'i *after* DLNR undertook salvage operations and eventually scuttled the *Nakoa*. Third Decl. of Opal Whitney at ¶ 5, Dkt. No. 294. Specifically, following the grounding of the *Nakoa*, the State demanded that ION S.A. pay its salvage costs and, in the meantime, canceled the licenses for all *other* vessels insured by ION S.A. *Id.* To mitigate this fall-out, ION S.A. agreed to transfer those policies to ION USA in exchange for the State reinstating the licenses for those vessels. *Id.* Thus, when considered in this context, it is clear that Lewis' email refers *solely* to the transfer of ION S.A.'s other policies, and not to that of the *Nakoa*, which, by that time, had already sunk.[23] *See id.* at ¶¶ 4–5; *see also* Robinson Depo. at 13:25–14:6 (confirming that ION S.A. never transferred the Policy covering the *Nakoa* to another entity). As a result, because there is simply no dispute that ION S.A., *not* ION USA, held the Policy for the *Nakoa*, each of the Alberts' claims against ION USA fails.[24] *See* Robinson Depo. at 13:15–19; First Whitney Decl. at ¶ 5; Second Whitney Decl. at ¶ 6. ION USA is therefore entitled to summary judgment on Counts I, IV, IX, X, XI, and XII.

---

[23]Troublingly, the Alberts appear to have been informed by ION S.A./ION USA's counsel as to this background *prior* to filing their opposition to the instant motion for summary judgment. *See* Decl. of Gregory Y.P. Tom at ¶¶ 4-6, Dkt. No. 294. Despite knowledge of this background, Plaintiffs shared none of it with the Court.
[24]Indeed, the Alberts do not appear to dispute that a failure to establish that ION USA held the Policy would be fatal to their claims against it. *See generally* Dkt. No. 282.

## II.  **ION S.A.**

The Alberts likewise allege Counts I (Breach of Contract), IV (Negligence),

IX (*Respondeat Superior*), X (Insurance Bad Faith), XI (UDAP), and XII

(Exemplary Damages) against ION S.A.  SAC at ¶¶ 84–86, 96–99, 124–135.  ION

S.A. moves to dismiss each of these counts under the doctrine of *forum non*

*conveniens*, arguing that "[t]he insurance policy which forms the basis of all claims

against ION S.A. has a forum selection clause."  Dkt. No. 258 at 2.  That clause

states:

> Your policy shall be governed by and construed in accordance with the
> law of Costa Rica and the *courts of Costa Rica shall have exclusive*
> *jurisdiction* to settle any dispute or claim arising out of or in connection
> with your policy, or its subject matter or formation (including non-
> contractual disputes or claims) unless specifically agreed to the
> contrary.

*See id.* at 4; ION S.A. CSF Ex. 1 at 10 (emphasis added);[25] *see also Atl. Marine*

*Const. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Texas*, 571 U.S. 49, 60 (2013)

("the appropriate way to enforce a forum-selection clause pointing to a state or

---

[25]In resolving a motion to dismiss for *forum non conveniens*, the Court may consider materials
outside the pleadings without converting the motion into a motion for summary judgment.  *See*
*Sadiq v. Metro. Coffee Co.*, 2021 WL 4499234, at *2 n.1 (N.D. Cal. July 12, 2021) (explaining
that "[a]lthough the Supreme Court has held that Rule 12(b)(3) is not a proper mechanism to
enforce a forum-selection clause where venue is otherwise proper under 28 U.S.C. § 1391(b), . . .
courts in this circuit have continued to apply the standard of review for Rule 12(b)(3) motions in
considering the enforceability of a forum-selection clause under § 1404(a) and the doctrine of
*forum non conveniens*." (quotation marks, some brackets, and citations omitted)); *see also Chey*
*v. Orbitz Worldwide, Inc.*, 983 F.Supp.2d 1219, 1227 (D. Haw. 2013) ("In deciding a Federal
Rule of Civil Procedure 12(b)(3) motion, the court may consider facts outside the pleadings and
need not accept the pleadings as true.").

foreign forum is through the doctrine of *forum non conveniens*.").  According to

ION S.A., the Alberts' claims "[f]all within the Policy's mandatory forum

selection clause" because they "only allege that ION S.A. breached obligations

under the Policy."  Dkt. No. 258 at 9.  As such, ION S.A. requests that the Court

enforce the forum selection clause by "grant[ing] the Motion under the doctrine of

*forum non conveniens*."  *See id.*

> The presence of a valid forum-selection clause requires district courts
> to adjust their usual [venue and jurisdictional] analysis in [two] ways
> . . . First, the plaintiff's choice of forum merits no weight.  Rather, as
> the party defying the forum-selection clause, the plaintiff bears the
> burden of establishing that [dismissal in favor of] the forum for which
> the parties bargained is unwarranted. . . Second, a court evaluating a
> defendant's [motion to dismiss] based on a forum-selection clause
> should not consider arguments about the parties' private interests[26]. . .
> [and] may consider arguments about public interest factors[27] only.

*Atl. Marine,* 571 U.S. at 63–64; *accord Sun v. Advanced China Healthcare, Inc.*,

901 F.3d 1081, 1087–88 (9th Cir. 2018).  Consequently:

> [t]he practical result is that . . . a forum selection clause [is] controlling
> unless the plaintiff ma[kes] a strong showing that: (1) the clause is
> invalid due to fraud or overreaching, (2) enforcement would contravene
> a strong public policy of the forum in which suit is brought, whether

---

[26]"Factors relating to the parties' private interests include 'relative ease of access to sources of
proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining
attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to
the action; and all other practical problems that make trial of a case easy, expeditious, and
inexpensive.'"  *Atl. Marine*, 571 U.S. at 62 n.6 (quoting *Piper Aircraft v. Reyno*, 454 U.S. 235,
241 n.6 (1981)).

[27]"Public-interest factors may include 'the administrative difficulties flowing from court
congestion; the local interest in having localized controversies decided at home; and the interest
in having the trial of a diversity case in a forum that is at home with the law."  *Atl. Marine*, 571
U.S. at 62 n.6 (quoting *Piper Aircraft*, 454 U.S. at 241 n.6) (brackets omitted).

> declared by statute or by judicial decision, or (3) trial in the contractual
> forum will be so gravely difficult and inconvenient that the litigant will
> for all practical purposes be deprived of his day in court.

*Sun*, 901 F.3d at 1088 (quotation marks, some brackets, and citation omitted).

Here, the Alberts do not dispute that their claims are governed by a forum selection clause which grants Costa Rican courts exclusive jurisdiction over claims arising out of or in connection with the Policy. *See* Dkt. No. 280 at 6–9. Nevertheless, they argue that the clause should not be enforced because: (1) "questions persist as to whether ION SA actually held the Policy for the [*Nakoa*];" (2) "forum selection clauses have historically **not been favored** by American courts;" (3) all relevant contacts, including the location of the *Nakoa*, grounding, claim, and declination of coverage, are in Hawaiʻi; and (4) dismissal of their claims in favor of a Costa Rican forum would "contravene[] a strong public policy" in the form of the State's "legitimate and compelling interest in ensuring that claims involving environmental harm are adjudicated within its jurisdiction." Dkt. No. 280 at 6–8 (quotation marks, some brackets, and citations omitted).

Each of these arguments is frivolous. As an initial matter, although the Alberts claim that there are material disputes of fact as to whether ION USA or ION S.A. held the Policy for the *Nakoa*, such contentions are unavailing for the reasons already discussed above. *See supra* 17–19. ION S.A. is the holder of the Policy and, thus, has standing to enforce the forum selection clause. *See* First

Whitney Decl. at ¶ 5; Robinson Depo. at 13:15–19.

Second, the Alberts' assertion that forum selection clauses are disfavored is *directly contradicted* by the very case on which they rely: *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).[28] Dkt. No. 280 at 7. True, the *Bremen* Court initially noted that "[f]orum-selection clauses have *historically* not been favored by American courts . . . on the ground that they were 'contrary to public policy,' or that their effect was to 'oust the jurisdiction' of the court." 407 U.S. at 9 (emphasis added). But what the Alberts omit is the *Bremen* Court's ultimate determination:

> [t]he argument that [forum selection] clauses are improper because they tend to 'oust' a court of jurisdiction is hardly more than a vestigial legal fiction . . . and has little place in an era when all courts are overloaded and when businesses once essentially local now operate in world markets . . . Thus, in the light of present-day commercial realities and expanding international trade we conclude that the forum clause should control absent a strong showing that it should be set aside.

*Id.* at 12, 15; *accord Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring) (noting that "[t]he justifications [the Supreme Court] noted in *The Bremen* to counter the historical disfavor forum-selection clauses had received in American courts" also "applies with much force to federal courts

---

[28] In fact, even the other cases that the Alberts cite for the same point are inapposite. *Compare* Dkt. No. 280 at 7, *with Holck v. Bank of New York Mellon Corp.*, 769 F.Supp.2d 1240, 1248 (D. Haw. 2011) ("According to federal law, forum selection clauses are presumptively valid and should be honored 'absent some compelling and countervailing reason'" (quoting *Bremen*, 407 U.S. at 12))*, and Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) ("Thus, 'absent some compelling and countervailing reason [a forum selection clause] should be honored by the parties and enforced by the courts.'" (quoting *Bremen*, 407 U.S. at 12)).

sitting in diversity"); *Atl. Marine*, 571 U.S. at 62 ("When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.").  As such, to the extent that the Alberts assert that forum selection clauses should be presumed unenforceable or viewed with suspicion, that argument is simply contrary to law.

Third, the Alberts' argument that "the substantial – and all relevant – contacts are located within this Court's jurisdiction" is similarly of little consequence.  Dkt. No. 280 at 8 (citations omitted).  As the Supreme Court has concluded, private interests, such as the convenient contacts identified by the Alberts, "should not" be part of the *forum non conveniens* analysis when there is a forum selection clause.  *See Atl. Marine*, 571 U.S. at 62–64.

Finally, the Alberts' assertion that enforcing the forum selection clause would contravene the State of Hawaiʻi's "legitimate and compelling interest in ensuring that claims involving environmental harm are adjudicated within its jurisdiction" is also meritless.  *See* Dkt. No. 280 at 8.  While the grounding of the *Nakoa* certainly implicates "damage to the sensitive marine ecosystem," as the Alberts contend, *id.* at 7–8 (citing Haw. Const. art. 11, § 1 & Haw. Rev. Stat. § 344-3), this case does not.  The State of Hawaiʻi is currently prosecuting a separate environmental enforcement action against the Alberts, Jim Jones, and Noelani before the Board of Land and Natural Resources—something on which the

dismissal of *these* claims would have little, if any, evident effect.[29]  *See* AFN CSF Ex. 18; ACSF in Opp. to ION S.A Ex. B.  As such, insofar as the State has a "strong public policy" in favor of the local adjudication of claims involving environmental harm, the dismissal of the Alberts' coverage-related claims against ION S.A. would not implicate the same.

Based on the foregoing, the Alberts have failed to establish that the parties' preselected forum of Costa Rica should not be enforced.  All claims against ION S.A. are therefore dismissed without prejudice and without leave to amend pursuant to the doctrine of *forum non conveniens*.[30][31]

### III.    AFN, Bonner, LFG and Norvell[32]

The remaining claims are: Count I – Breach of Contract (AFN and Bonner); Count II – Breach of Contract (LFG); Count III – Misrepresentation (AFN and

---

[29]Any fines assessed against the Alberts pursuant to such proceedings would likely be excluded from coverage under the Policy.  *See* Dkt. No. 291 at 3 n.1; ION S.A. CSF Ex. 1 at 16–17 ("No cover is provided in respect of . . . [a]ny liability for fines or penalties and/or aggravated or exemplary damages.").

[30]ION S.A. offers other arguments in support of its motion for summary judgment, including that it was justified in denying coverage under General Exclusion Sections 8.34 and 8.35 of the Policy.  *See* Dkt. No. 258 at 5, 9–12.  Because these issues must be resolved in a Costa Rican forum, this Court does not reach them.

[31]The Alberts' Motion for Partial Summary Judgment as to Count X, Against Defendant ION Insurance Group S.A., Dkt. No. 225, and Defendant Ion Insurance Group, S.A.'s Counter Motion to Plaintiffs' Motion for Partial Summary Judgment as to Count X, Against Defendant Ion Insurance Group, S.A., Dkt. No. 238, are consequently MOOT and deemed WITHDRAWN.

[32]Several of these claims were also alleged against Edward William, ION USA, and ION S.A. *See, e.g.*, SAC at ¶¶ 84–86, 96–99, 124–126, 131–135.  Because these Defendants have been dismissed from this case, *see supra* 17–25, Dkt. Nos. 274 & 276, the Court does not further address these claims against them.

Bonner); Count IV – Negligence (AFN and Bonner); Count VI – Breach of

Fiduciary Duty (Bonner); Count VII – Breach of Fiduciary Duty (LFG and

Norvell); Count VIII – *Respondeat Superior* (AFN); Count X – Insurance Bad

Faith (AFN and Bonner); Count XI – UDAP (AFN and Bonner); and Count XII –

Exemplary Damages (AFN, Bonner, LFG, and Norvell).  SAC at ¶¶ 84–99, 106–

135.  The Court addresses each in turn.

    **a.**    <u>**Counts I & II – Breach of Contract (AFN, Bonner, and LFG)**</u>

In Counts I and II, the Alberts bring breach of contract claims against

AFN/Bonner and LFG, respectively.  SAC at ¶¶ 84–91.  Under Hawaiʻi law, to

prevail on such claims, the plaintiff must prove that: (1) there is a valid contract

between the parties; (2) the plaintiff performed under that contract; (3) the

defendant failed to perform a particular provision of the contract; (4) the

defendant's failure to do so was the proximate cause of the plaintiff's injury; and

(5) the nature and extent of such damages were reasonably foreseeable at the time

of contracting.  *See Calipjo v. Purdy*, 439 P.3d 218, 225 (Haw. 2019); *Evergreen

Eng'g, Inc. v. Green Energy Team LLC*, 884 F.Supp.2d 1049, 1059 (D. Haw.

2012).

Here, the Alberts claim that AFN, Bonner, and LFG breached their

respective contracts[33][34] by failing to procure/verify insurance with breach of

warranty coverage.  *See* SAC at ¶¶ 84–91; Dkt. No. 6–8, 10; Dkt. No. 284 at 16,

19.  According to the Alberts, had such coverage been a part of the Policy, they

would have been "protect[ed] . . . against a denial of coverage by the insurance

carrier for such loss."  SAC at ¶ 89.

Even assuming that the Alberts could establish that there were contracts

between the parties, that the Alberts performed under such contracts, that such

contracts required AFN, Bonner, and/or LFG to obtain/verify an insurance policy

with breach of warranty coverage, and that AFN, Bonner, and/or LFG failed to do

so,[35] the Alberts' breach of contract claims nevertheless fail because they cannot

show *causation—i.e.*, that inclusion of a breach of warranty endorsement would

---

[33]With respect to Count I (AFN & Bonner), the Alberts do not clearly identify the relevant
contract.  While the SAC indicates that the contract is the Policy itself, *see* SAC at ¶ 85, the
Alberts pivot to a theory of implied quasi-contract in their opposition brief to AFN and Bonner's
motion for summary judgment, *see* Dkt. No. 284 at 11–13, 16.  This shift represents a transparent
attempt to avoid summary judgment, given that AFN and Bonner were never parties to the
Policy, and thus, could not be liable for breach of the same.  *See* AFN CSF Ex. 12 at 2; *see also
Honold v. Deutsche Bank Nat'l Trust Co.*, 2010 WL 5174383, at *3 (D. Haw. Dec. 15, 2010)
(dismissing a breach of contract claim for, *inter alia*, failure to identify the contract and parties at
issue).  Since the time to amend the Complaint has long since passed—and the Alberts never
sought leave to do so—summary judgment for AFN and Bonner on Count I is appropriate for
this reason alone.  *See* Dkt. No. 230 at 1; *see also Patrick v. 3D Holdings, LLC*, 2014 WL
1094917, at *12 (D. Haw. Mar. 18, 2014) ("[A] plaintiff may not amend her complaint through
argument in a brief opposing summary judgment[.]" (quotation marks and citation omitted)).
[34]With respect to Count II (LFG), the parties agree, at least for the purpose of the instant
motions, that the contract underlying this claim is the Conditional Approval Agreement.  *See*
Dkt. No. 256-1 at 19–24; Dkt. No. 278 at 6.
[35]The Court does not reach any of these issues, many of which have been challenged by
Defendants through their various motions, *see e.g.*, Dkt. No. 263 at 20–23, because it is
unnecessary to do so.

have prevented their alleged injury. *See Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 839 P.2d 10, 32–33 (Haw. 1992) ("The general rule is that in an action for damages for breach of contract only such damages can be recovered as are the natural and proximate consequence of its breach; that the damages recoverable must be incidental to the contract and be caused by its breach[.]" (citation omitted)). Notably, as the Alberts themselves acknowledge, each "breach of warranty endorsement . . . [is] entirely unique and individually written to address the risks that the lienholder and/or insured have and want to have coverage for." Dkt. No. 278 at 7 (quotation marks and citation omitted). Consequently, to substantiate their assertion that a breach of warranty endorsement in *this* context would have led to coverage under the terms of the Policy, the Alberts would have needed to provide expert testimony describing what this endorsement would have looked like—something which they failed to do.[36] *See* Dkt. No. 256-1 at 28–29; Dkt. No. 263 at 33; *Park v. Haw. Med. Serv. Ass'n*, 2022 WL 706526, at *4 (D.

---

[36]The expert witness disclosure deadlines have long since closed, and the only expert that the Alberts noticed was Christine A. Sullivan. LFG CSF Ex. M, Dkt. No. 257-20; Alberts' Response to LFG CSF Ex. 1; Dkt. No. 230 at 2. The Sullivan report is unsworn and, therefore, not properly considered on a motion for summary judgment. *See* LFG CSF Ex. M at 5–6; Alberts' Response to LFG CSF Ex. 1 at 4–5; *Nash-Perry v. City of Bakersfield*, 2021 WL 3883681, at *6 (E.D. Cal. Aug. 31, 2021) ("It is well-established within the Ninth Circuit that unsworn expert reports cannot be used to create a triable issue of fact for purposes of summary judgment."). Moreover, the Sullivan report *supports* Defendants' argument that there is no guarantee that a breach of warranty endorsement would have prevented the Alberts' alleged damages. *See* LFG CSF Ex. M at 5–6; Alberts' Response to LFG CSF Ex. 1 at 4–5 (explaining that breach of warranty endorsements are "unique," and may "include such things as the price of the vessel; mortgage amount; personal property on the vessel; etc.").

Haw. Mar. 9, 2022) ("The nonmoving party can fail to establish an essential element of its claim by not providing expert testimony in support of a 'particular conclusion [that] requires specialized knowledge.'" (quoting *Claar v. Burlington N. R. Co.*, 29 F.3d 499, 504 (9th Cir. 1994)).  In fact, the Alberts have no *evidence*, other than their own unsupported assertions, that the missing breach of warranty endorsement would have required ION S.A. and Edward William to provide them with coverage for the grounding and loss of the *Nakoa*.[37]  As such, because the Alberts cannot establish that AFN, Bonner, and LFG's alleged failures to obtain a breach of warranty endorsement *caused* their injuries, their breach of contract claims must fail.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").  AFN/Bonner and LFG are therefore entitled to summary judgment on Counts I and II, respectively.

---

[37]In light of the "unique" nature of breach of warranty endorsements, it is possible that even expert testimony would not have been able to establish causation in this case.  *See* LFG CSF Ex. N at 4, Dkt. No. 257-21 (expert with "no opinion as to whether [a breach of warranty] endorsement would have allowed recovery under the policy at issue"); Robinson Depo. at 50:12–24 (ION S.A.'s Rule 30(b)(6) designee unable to state whether a breach of warranty provision would have altered the decision to decline coverage); *see also* Dkt. No. 110 at 16 (noting, at the motion to dismiss stage, that "[i]nsurance coverage disputes turn largely on the language in insuring instruments," and that it was impossible to determine breach of warranty coverage here, as the Alberts did not offer a "sample breach of warranty endorsement from ION Insurance Company or any other insurer.").

**b.    Count III – Misrepresentation (AFN and Bonner)**

In Count III, the Alberts bring a misrepresentation claim against AFN and

Bonner.  To prevail on a claim for negligent misrepresentation[38] under Hawaiʻi

law, the plaintiff must prove that: (1) the defendant supplied false information as a

result of his or her failure to exercise reasonable care or competence in

communicating the information; (2) the recipient justifiably relied on the

information; and (3) that as a result of that reliance, the person for whose benefit

the information was supplied suffered a pecuniary loss.  *See Blair v. Ing*, 21 P.3d

452, 474 (Haw. 2001) (citing *Kohala Agric. v. Deloitte & Touche*, 949 P.2d 141,

163 (Haw. Ct. App. 1997) & Restatement (Second) of Torts § 522); *Chun v. Park*,

462 P.2d 905, 909 (Haw. 1969).

Here, the Alberts claim that AFN and Bonner engaged in negligent

misrepresentation when they made "misrepresentations to, or by omission failed to

be truthful with, the Trust with respect to various aspect[s] of the Policy, their

investigation into the Grounding, and/or the denial of coverage by ION [S.A.] and

Edward William," including "failing to notify the Trust about personal and

business relationships with [Jim] and/or Noelani Yacht Charters."  SAC at ¶¶ 93–

94.  But once again, even assuming that that is true and that the Alberts justifiably

---

[38]Although the SAC does not specify the type of misrepresentation alleged, the Alberts later
clarify that Count III is brought as a claim for negligent, rather than fraudulent,
misrepresentation.  *See* SAC at ¶¶ 92–95; Dkt. No. 284 at 16.

relied on the same,[39] the Alberts have nevertheless failed to show that their reliance on these unspecified misrepresentations and/or omissions *caused* their ultimate injury—*i.e.*, the denial of coverage by ION S.A. and Edward William. In fact, despite extensive discovery and briefing, the Alberts seemingly cannot even identify which aspects of the Policy, the investigation, and/or the denial of coverage were allegedly misrepresented, let alone explain and/or prove that accurate information as to those matters would have prevented their pecuniary losses. *See* SAC at ¶ 93; Dkt. No. 284 at 16–17. Consequently, because the Alberts have plainly failed to establish an essential element of their misrepresentation claim, AFN and Bonner are entitled to summary judgment on Count III. *See Celotex*, 477 U.S. at 322–23.

### c.   <u>Count IV – Negligence (AFN and Bonner)</u>

In Count IV, the Alberts bring a negligence claim against AFN and Bonner. SAC at ¶¶ 96–99. Hawaiʻi law provides that "[i]n order to prevail on a negligence claim, a plaintiff is required to prove all four of the necessary elements of negligence." *Molfino v. Yuen*, 339 P.3d 679, 682 (Haw. 2014). These include:

> (1) A duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others

---

[39]Of course, AFN and Bonner dispute this, arguing that because "the Alberts . . . never had any communication with Defendants prior to the Grounding, [] Defendants did not have the opportunity to make any misrepresentations to them that would have influenced the Joneses in buying the Policy." Dkt. No. 263 at 24. Any such lack of contact, however, would not prevent AFN and Bonner from making a negligent misrepresentation by *omission*—and, indeed, that is exactly the angle the Alberts' vague assertions take. *See* Dkt. No. 284 at 16.

against unreasonable risks;

(2) A failure on the defendant's part to conform to the standard required: a breach of the duty;

(3) A reasonably close causal connection between the conduct and the resulting injury; and

(4) Actual loss or damage resulting to the interests of another.

*Id.* Causation, in this context, is "legal cause"—that is, the plaintiff must prove that: "(a) the actor's conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his or her negligence has resulted in the harm." *O'Grady v. State*, 398 P.3d 625, 632–33 (Haw. 2017) (brackets and citation omitted).

Here, the Alberts contend that as the Trust's insurance broker, AFN and Bonner owed it a duty of care with respect to the Policy and the Grounding. *See* SAC at ¶ 97; Dkt. No. 284 at 17; *see also Quality Furniture, Inc. v. Hay*, 595 P.2d 1066, 1068 (Haw. 1979) ("An insurance agent owes a duty to the insured to exercise reasonable care, skill and diligence in carrying out the agent's duties in procuring insurance."). AFN and Bonner purportedly breached that duty by failing to communicate with the Trust and/or "acquire the proper insurance – including, but not limited to, a breach of warranty endorsement – despite knowing they were required by LFG to do so." Dkt. No. 284 at 17–18. "As a direct and proximate result of" these failures, "the Trust [] suffered damages . . . includ[ing] the loss of

- 32 -

the [*Nakoa*], the funds due and owing under the Purchase Agreement, and all environmental and salvage damage."  SAC at ¶ 99.

Despite these sweeping assertions, however, the Alberts' claim once again falls apart at the causation stage.  Notably, even if AFN and Bonner had a duty of care to the Trust and breached it by failing to communicate or obtain a breach of warranty endorsement, the Alberts have failed to offer any evidence—whether in the form of expert testimony or otherwise—which might substantiate their claims that proper communication and/or breach of warranty coverage would have resulted in ION S.A. and Edward William covering any portion of the loss to the *Nakoa*, the remaining balance on the Purchase Agreement, or the costs of environmental damage and salvage.  *See generally* Dkt. No. 284 at 17–18; Alberts' Response to LFG CSF.  Without such evidence, the Alberts cannot establish that "the defendant[s'] conduct was the legal *cause* of [their] injuries"—something which is "an essential element of [their] case with respect to which [they] ha[d] the burden of proof."  *See O'Grady*, 398 P.3d at 632 (emphasis added); *Celotex*, 477 U.S. at 323.  As such, the Alberts' negligence claim fails, and AFN and Bonner are entitled to summary judgment on Count IV.

### d. <u>Counts VI & VII – Breach of Fiduciary Duty (Bonner, LFG, and Norvell)</u>

In Counts VI and VII, the Alberts assert claims for breach of fiduciary duties against Bonner and LFG/Norvell, respectively.  SAC at ¶¶ 106–119.  Under

Hawai'i law, to state a claim for breach of fiduciary duty, the plaintiff must establish: (1) that the defendant owed a fiduciary duty to the plaintiff; (2) that the defendant breached that duty; and (3) that such breach was the proximate cause of injury to the plaintiff. *See Molokai Servs. Inc. v. Hodgins*, 414 P.3d 202, at *7 (Haw. Ct. App. 2018); *Aquilina v. Certain Underwriters at Lloyd's Syndicate #2003*, 407 F.Supp.3d 978, 1012 (D. Haw. 2019).

Here, the Alberts assert that Bonner, LFG, and Norvell, as agents/fiduciaries of the Trust, each owed it their "utmost loyalty and professional ability to protect its interest[s]," including with respect to the "selection and placement of the Policy with the Trust as the Named Insured" and the "procurement of appropriate financing and insurance for the [*Nakoa*]." SAC at ¶¶ 108–09, 114–15. Nevertheless, according to the Alberts, Bonner, LFG, and Norvell must have "breached their fiduciary duties to the Trust" because "among other things, coverage for all the claims related to the Grounding and loss of the [*Nakoa*] [were] denied." *Id.* at ¶¶ 110, 116. Specifically, the Alberts contend that Bonner breached his fiduciary duty by failing to: (1) properly communicate with the Trust; (2) discuss coverage options, including breach of warranty coverage; (3) disclose that Jim and Noelani Yacht Charters were untrustworthy; and (4) timely ensure the salvage of the *Nakoa* after it grounded on the morning of February 20, 2023. SAC at ¶ 111. Likewise, the Alberts claim that despite "h[olding] themselves out as

experts and professionals who offered comprehensive services, including (but not limited to) providing support to its clients," LFG and Norvell breached their fiduciary duty to the Trust by failing to verify that the Policy contained the breach of warranty provision that they themselves required. *See* Dkt. No. 278 at 9–10 (quotation marks, some brackets, and citations omitted). As a result, the Trust allegedly "suffered damages . . . all of which were proximately caused by Defendant[s'] [] breach of fiduciary dut[ies]." SAC at ¶¶ 112, 119.

These arguments, however, fare no better than the Alberts' previous claims. Rather, as before, even assuming that Bonner, LFG, and Norvell each owed the Trust a fiduciary duty,[40] and breached that duty in the various ways described above, the Alberts fail to provide any evidence which might indicate that Bonner, LFG, and/or Norvell's actions were the proximate *cause* of their alleged damages.[41]  *See* Dkt. No. 278 at 8–10; Dkt. No. 284 at 17–18. Put differently,

---

[40]The precise nature of these fiduciary duties, particularly with respect to LFG and Norvell, is unclear. The Alberts contend that LFG and Norvell "were obligated to exercise the utmost good faith, integrity, honesty, and loyalty and must diligently uphold a legally imposed duty of due care in their dealings with the Trust." Dkt. No. 278 at 9 (quotation marks and citations omitted). But, as LFG and Norvell point out, that statement contains several different duties, some of which, *e.g.,* the duty of loyalty, do not appear to be implicated here. *See* Dkt. No. 288 at 15–17. Nevertheless, given that LFG and Norvell also concede that, "[f]or the purposes of this motion, there is no dispute that the Luxury Financial Group Defendants owed the Trust fiduciary duties," the Court need not, and does not, address it further. *See id.* at 14.

[41]Of course, it is unclear whether such evidence even exists. *See* LFG CSF Ex. L at 2–3 (providing nine independently sufficient rationales for declining coverage); LFG CSF Ex. N at 4 (testifying to having "no opinion as to whether [a breach of warranty] endorsement would have allowed recovery under the policy at issue"); Alberts' Response to LFG CSF Ex. 1 at 4–5 (explaining that breach of warranty provisions are unique in their scope and coverage).

there is simply no indication, on the record presented to the Court, that better

communication, discussion of coverage options, disclosure of Jim and Noelani

Yacht Charters' so-called "untrustworthiness," timely salvage of the *Nakoa*, and/or

breach of warranty coverage would have made any difference in the Alberts'

ability to recover for the loss of the *Nakoa*. *See* Dkt. No. 256-1 at 29; Dkt. No. 263

at 31, 33. As such, Bonner, LFG, and Norvell are entitled to summary judgment

on Counts VI and VII. *See Celotex*, 477 U.S. at 322–23.

### e. **Count VIII – *Respondeat Superior* (AFN)**

In Count VIII, the Alberts allege a claim of *respondeat superior* against

AFN, alleging that because "Defendant Bonner is the President of Defendant

Allied[,] Defendant Allied is therefore responsible for his acts and omissions . . .

[and] liable to the Trust for all damage to the Trust caused by Defendant

Bonner." SAC at ¶¶ 121–23. However, "[r]espondeat superior is not an

independent cause of action, but a theory of liability" whereby "[a] principal may

be liable for the wrongful actions of its agent that occur while acting within the

scope of the agency." *Lopeti v. Alliance Bancorp*, 2011 WL 13233545, at *15 (D.

Haw. Nov. 4, 2011); *accord McCormack v. City & Cnty. of Honolulu*, 2014 WL

692867, at *2–3 (D. Haw. Feb. 20, 2014) (collecting cases). As a result, it "is not

cognizable as a stand-alone claim[.]" *See McCormack*, 2014 WL 692867, at *2

(citation omitted).  AFN is therefore entitled to summary judgment on Count VIII.
*See id.* at *3.

### f.   <u>Count X – Insurance Bad Faith (AFN & Bonner)</u>

In Count X, the Alberts bring a claim for "insurance bad faith" against AFN

and Bonner, contending that they breached their duty of good faith and fair dealing

to the Trust.  *See* SAC at ¶¶ 127–130; *Best Place, Inc. v. Penn Am. Ins. Co.*, 920

P.2d 334, 346 (Haw. 1996) (recognizing that "there is a legal duty, implied in a

first-and-third-party insurance contract, that the insurer must act in good faith in

dealing with its insured, and a breach of that duty of good faith gives rise to an

independent tort cause of action.").  Under Hawaiʻi law, such claims are "not a

tortious breach of contract, but rather a separate and distinct wrong which results

from the breach of duty imposed as a consequence of the relationship established

by contract." *Best Place*, 920 P.2d at 345.  As such, they are strictly construed in

light of the "special relationship between insurer and insured," "[t]he public

interest in insurance contracts, the nature of insurance contracts, [] the inequity in

bargaining power between the insurer and the policyholder," and the need to deter

insurer misconduct.  *See id.* at 345–46 (citation omitted); *accord Willis v. Swain*,

304 P.3d 619, 627 (Haw. 2013); *Francis v. Lee Enters., Inc.*, 971 P.2d 707, 710–11

(Haw. 1999).

AFN and Bonner, however, are *brokers*, not insurers, and thus were not parties to the Policy itself.[42]  *See* AFN CSF Ex. 12 at 2–3; Albert Depo. at 100:9–11.  As such, they could not have been subject to the implied contractual duty of good faith and fair dealing that underpins this cause of action.  *See Aquilina*, 407 F.Supp.3d at 1008–10; *see also Simmons v. Puu*, 94 P.3d 667, 675 (Haw. 2004) (stressing that "the *raison d'tre* of the tort of bad faith was to avoid depriving the insured of the *benefits for which he or she had contracted*." (quotation marks, citation, and brackets omitted)).  Indeed, courts in this District have uniformly declined to extend bad faith claims to insurance agents and brokers for this reason, noting that "the Hawaii Supreme Court emphasized that the tort of bad faith, as adopted in *Best Place*, requires a contractual relationship between an *insurer* and an insured."  *See Mier v. Lordsman Inc.*, 2011 WL 285862, at *5 (D. Haw. Jan. 27, 2011) (quoting *Jou v. Nat'l Interstate Ins. Co. of Hawaii*, 157 P.3d 561, 568 (Haw. Ct. App. 2007)) (emphasis added); *see also Aquilina*, 407 F.Supp.3d at 1008–09 (collecting cases).  Because no such relationship exists here, the Alberts cannot establish that the tort of "*insurer* bad faith" is cognizable against AFN and Bonner.  *See Best Place*, 920 P.2d at 339 (emphasis added); *Aquilina,* 407 F.Supp.3d at 1009 (finding it implausible that "an agent of an insured can even be the subject of

---

[42]Nor, in any case, was the Trust the named insured until the Policy was amended following the grounding of the *Nakoa*.  *See* AFN CSF at ¶ 34; Alberts' Response to AFN CSF at ¶ 34; AFN CSF Ex. 16.

a bad faith claim under Hawaiʻi law.").  AFN and Bonner are therefore entitled to

summary judgment on Count X.[43]

### g.    Count XI – Unfair and Deceptive Acts and Practices (AFN and Bonner)

In Count XI, the Alberts assert a claim against AFN and Bonner for unfair

and deceptive acts or practices ("UDAP") pursuant to Hawaiʻi Revised Statutes

("HRS") § 480.  *See* SAC at ¶¶ 131–33; *see also* HRS § 480-2(a) ("Unfair methods

of competition and unfair or deceptive acts or practices in the conduct of any trade

or commerce are unlawful.").  To state a UDAP claim, "a consumer[44]  must allege:

(1) a violation of HRS § 480-2; (2) injury to plaintiff's business or property

*resulting* from such violation; and (3) proof of the amount of damages."  *Aquilina*,

407 F.Supp.3d at 998 (emphasis added); *accord Lima v. Deutsche Bank Nat'l Trust

Co.*, 494 P.3d 1190, 1197–98 (Haw. 2021). "While proof of a violation of chapter

480 is an essential element of an action under HRS § 480-13, the mere existence of

a violation is not sufficient *ipso facto* to support the action; forbidden acts cannot

---

[43]In addition, to the extent that the *tort* of insurer bad faith can be reasonably understood to contain a causation requirement, Count X would fail for the lack of the same for the reasons already explained.  *See Best Place*, 920 P.2d at 345–46; *Privratsky v. Liberty Mutual Fire Ins. Co.*, Civ. No. 21-00390-DKW-RT, Dkt. No. 346 at 23.

[44]AFN and Bonner contend that the Alberts lack standing to bring this action because they are not "consumers" within the meaning of HRS § 480.  *See* Dkt. No. 263 at 25; *see also* HRS § 480-1 (defining a "consumer" as "a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment.").  Although the Alberts do not respond to this argument, *see* Dkt. No. 284 at 19, the Court nevertheless does not reach this issue in light of the evident lack of causation, *see infra* 40.

be relevant unless they cause some private damage." *Hawaii Med. Ass'n v. Hawai'i Med. Serv. Ass'n, Inc.*, 148 P.3d 1179, 1216 (Haw. 2006) (brackets, quotation marks, and citation omitted).

Here, the Alberts claim that AFN and Bonner violated HRS § 480-2 "when [they] failed to include the required breach of warranty provision in the Policy; yet, nevertheless provided LFG with a Certificate of Insurance for the [*Nakoa*] mistakenly listing such an endorsement was present." Dkt. No. 284 at 19. According to the Alberts, "[a]t a minimum (although the full amount remains contested), had the breach of warranty endorsement been included as required, recovery would have included the loan balance on the [*Nakoa*]." *Id.* at 19–20. As such, "[t]he Trust was damaged when the insurance claim – made for the loss of the [*Nakoa*], due to the Grounding – was denied." *Id.* at 19.

Like nearly all of the Alberts' claims, however, this argument fails for lack of causation. Notably, in alleging that the inclusion of a breach of warranty endorsement would have guaranteed some amount of recovery on the insurance claim, the Alberts cite *only* to the declaration of Michael Smith—LFG and Norvell's expert—who testified, *inter alia*, that a "breach of warranty endorsement [] allows the lender to recover from the insurer if the owner or operator of the vessel breaches one of the warranties in the vessel's insurance policy." *See id.* at 20; Smith Decl. at ¶ 4. Smith, in other words, described the endorsement, in

general, as protecting the lender, not the insured.   Smith also stated that under

*these* particular circumstances, "[e]ven if . . . breach of warranty coverage had been

obtained, I have no opinion as to whether such an endorsement would have

allowed recovery under the policy at issue."  LFG CSF Ex. N at 4.  As such,

because the Alberts have, once again, failed to provide any evidence showing that

the only alleged UDAP violation they assert—assuming that it occurred—*caused*

them injury, this claim fails.  *See Celotex*, 477 U.S. at 322–23.  AFN and Bonner

are entitled to summary judgment on Count XI.

### h.   Count XII – Exemplary Damages (LFG, Norvell, AFN, and Bonner)

In Count XII, the Alberts seek punitive/exemplary damages against LFG,

Norvell, AFN, and Bonner, arguing that their "conduct, jointly and severally, with

respect to the Grounding and the denial of coverage was grossly negligent, willful,

and demonstrated a wanton disregard for the consequences of their actions or

omissions."  SAC at ¶ 135.  Such damages, however, are not an independent cause

of action, but rather may be a *remedy* incidental to another tort.  *See Ross v.*

*Stouffer Hotel Co. (Hawaiʻi) Ltd., Inc.*, 879 P.2d 1037, 1049 (Haw. 1994); *see also*

*Liberty Mut. Ins. Co. v. Sumo-Nan LLC*, 2015 WL 2449480, at *6 (D. Haw. May

20, 2015) (collecting cases).  As such, in light of the Court's grant of summary

judgment to LFG, Norvell, AFN, and Bonner on all substantive claims, the

Alberts' request for punitive damages must be denied.  LFG, Norvell, AFN, and

Bonner are entitled to summary judgment on Count XII. *See Philadelphia*

*Indemnity Ins. Co. v. Ohana Control Sys., Inc.*, 289 F.Supp.3d 1141, 1153 (D.

Haw. 2018).

## **CONCLUSION**

For the reasons set forth herein:

- Defendants Luxury Financial Group LLC and Noelle Norvell's Motion for Summary Judgment, Dkt. No. 256, is GRANTED;

- Defendant ION Insurance Group, S.A.'s Motion to Dismiss, Dkt. No. 258, is GRANTED WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND;

- Defendant ION Insurance Company, Inc.'s Motion for Summary Judgment, Dkt. No. 260, is GRANTED;

- Defendants Allied Financial Network and Steve Bonner's Motion for Summary Judgment, Dkt. No. 262, is GRANTED;

- Plaintiffs Kevin S. Albert and Kimberly LeBlanc Albert's Motion for Partial Summary Judgment as to Count X, Against Defendant ION Insurance Group S.A., Dkt. No. 225, is MOOT and deemed WITHDRAWN; and

- Defendant ION Insurance Group, S.A.'s Counter Motion to Plaintiffs' Motion for Partial Summary Judgment, as to Count X, Against Defendant ION Insurance Group, S.A., Dkt. No. 238, is MOOT and deemed WITHDRAWN.

The Clerk of Court is instructed to enter Judgment, pursuant to this Order, and then to CLOSE this case.

IT IS SO ORDERED.

DATED: August 4, 2025 at Honolulu, Hawai'i.



Derrick K. Watson
Chief United States District Judge

---

*Kevin S. Albert and Kimberly LeBlanc Albert, Trustees of the Albert Revocable Trust UAD 6/3/1997 and Restated 1/7/2020 vs. Edward William SL, et al.*, Civ. No. 23-00221-DKW-WRP; **ORDER (1) GRANTING DEFENDANTS LUXURY FINANCIAL GROUP, NOELLE NORVELL, ION INSURANCE COMPANY, ALLIED FINANCIAL NETWORK, AND STEVE BONNER'S MOTIONS FOR SUMMARY JUDGMENT; (2) GRANTING DEFENDANT ION INSURANCE GROUP, S.A.'S MOTION TO DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND; AND (3) DEEMING PLAINTIFFS KEVIN AND KIMBERLY ALBERT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT ION INSURANCE GROUP, S.A.'S COUNTER MOTION FOR PARTIAL SUMMARY JUDGMENT MOOT AND WITHDRAWN**